[No. G040743. Fourth Dist., Div. Three. Feb. 3, 2010.]

BRADFORD KUISH, Plaintiff and Appellant, v.
WILLIAM W. SMITH, JR., et al., Defendants and Respondents.

**COUNSEL**

Samuels, Green & Steel and Philip W. Green for Plaintiff and Appellant.

Prenovost, Normandin, Bergh & Dawe, Michael G. Dawe and Paula M. Harrelson for Defendants and Respondents.

**OPINION**

**FYBEL, J.—**

### INTRODUCTION

Plaintiff Bradford Kuish entered into a written agreement to purchase defendants William W. Smith, Jr., and Rhonda Lynn Smith's Laguna Beach

residence for $14 million, but later unilaterally cancelled escrow. Defendants promptly sold the property to a third party for $15 million, but refused to return plaintiff's $620,000 deposit, relying on the agreement's description of the deposit as "non-refundable."

Following a bench trial on plaintiff's claims seeking the return of the deposit, the trial court found in favor of defendants. The court concluded, inter alia, defendants' retention of $600,000 of the deposit did not constitute a forfeiture but did constitute separate and additional consideration for defendants' agreement to extend the escrow closing date. The court also concluded $20,000 of the deposit was refundable to plaintiff, but that amount was offset by the amount of damages sustained by the roof of the residence during the escrow period plus the amount of interest plaintiff owed defendants.

We reverse and remand the matter to the trial court. As we will explain, defendants' retention of $600,000 of plaintiff's deposit constitutes an invalid forfeiture within the meaning of the California Supreme Court's decision in *Freedman v. The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629] (*Freedman*), under the circumstances of this case. Shortly after plaintiff cancelled escrow, defendants sold the property for $1 million more than plaintiff had agreed to pay. Defendants do not contend they suffered $600,000 in actual damages as a result of plaintiff's actions.

The trial court also erred by concluding the parties' agreement the deposit would be nonrefundable constituted "separate and additional consideration" supporting defendants' agreement to extend the escrow closing date. The parties' original agreement referred to the deposit as nonrefundable. Thus, the parties' subsequent modifications to the agreement extending the escrow closing date could not be based on the nonrefundable nature of the deposit as separate and additional consideration for those modifications.

## FACTS[1]

In December 2005, plaintiff offered to buy defendants' single-family residence which was located in Laguna Beach (the property). On January 7, 2006, the parties entered into a written agreement in which plaintiff agreed to purchase the property for $14 million (the agreement); the agreement consisted of an offer and nine counteroffers.

The agreement required plaintiff to make two "non-refundable" deposits into escrow in early 2006. The first deposit was to be in the amount of

---

[1] The summary of facts is based on the parties' stipulated facts as reiterated in the trial court's amended statement of decision.

$400,000 and was to be made upon the opening of escrow; this deposit was to be released to defendants "upon approval of contingencies on or before February 12." The second deposit in the amount of $400,000 was to be made on or before February 12. Escrow was to close on or before July 28. The agreement did not contain a liquidated damages provision and did not constitute an option contract for the purchase of real property.

Plaintiff and defendants signed an acknowledgement of escrow instructions, dated January 12, 2006, which modified the agreement to provide for a total of $820,000 in deposits. The acknowledgement of escrow instructions stated that plaintiff had already deposited $400,000, and further stated plaintiff would deposit $20,000 by February 12 and an additional $400,000 by April 21.

The parties signed amended escrow instructions, dated February 13, 2006, which (1) decreased the total amount of deposit payments from $820,000 to $620,000 (the instructions stated plaintiff had already deposited $420,000 into escrow and would deposit an additional $200,000 into escrow by Apr. 21), and (2) extended the escrow closing date from July 28 to August 10.

The parties again signed amended escrow instructions, dated March 24, 2006, which again changed the escrow closing date from August 10 to September 15. Plaintiff paid the $620,000 deposit required by the February 13 amended escrow instructions. Of that amount, $400,000 was released by the escrow company to defendants. The remainder of the deposit ($220,000) was held in escrow.

On September 18, 2006, plaintiff's counsel sent a letter to the escrow company, requesting that escrow be cancelled. Plaintiff and defendants signed cancellation escrow instructions dated October 17. At the time escrow was cancelled, defendants turned to a backup offer they had received for the purchase of the property. Defendants sold the property to the person or entity that made the backup offer for $15 million; escrow closed on that sale on November 16.[2]

Defendants refused to return any portion of the deposit payments made by plaintiff and released to defendants, and refused to allow the escrow company to release any portion of the deposit payment still held in escrow. The parties stipulated defendants were entitled to a credit in the amount of $9,483.15 "to account for damage to Defendants' roof that occurred during Plaintiff[']s staking of the Property."

---

[2] The parties further stipulated the property was worth $15 million on September 18 and October 17, 2006.

## PROCEDURAL HISTORY

Plaintiff filed a complaint against defendants, containing claims for conversion, unjust enrichment, money had and received, and declaratory relief; plaintiff sought the recovery of his $620,000 deposit. Following a bench trial, during which the parties' stipulated facts and live testimony by plaintiff and defendant William Smith, Jr., were offered into evidence, the trial court issued an amended statement of decision in which the court ruled in favor of defendants on all causes of action. The court stated, "[t]here was no breach of contract alleged in this case because it was the Plaintiff that unilaterally cancelled the escrow. Plaintiff's failure to perform and consent have been proven. Any breach of contract against the Defendants was excused by the prior material breach of the plaintiff."

The trial court concluded $20,000 of the $620,000 total deposit was refundable. The court also concluded defendants' retention of the nonrefundable portion of the deposit ($600,000) did not constitute a forfeiture "because both parties were 'big boys,' that is, sophisticated business people, [who] understood all the ramifications of their actions in freely negotiating to make the deposits non-refundable." The trial court stated defendants were entitled to keep a portion of the deposit "on the basis that it constitutes separate and additional consideration for extending the time and length [of] keeping escrow open for nine months." The court also stated it found "the separate and additional consideration for the escrow being open for nine months is the $620,000.00."

In the amended statement of decision, the trial court also addressed the remaining controverted issues at trial by stating (1) defendants had not wrongfully interfered with plaintiff's exclusive possession of the $620,000 deposited into escrow; (2) defendants had not been unjustly enriched by retaining $400,000 of the deposit and refusing to permit the release of the remaining $200,000 from escrow; (3) defendants were not indebted to plaintiff for the amount of the deposit; and (4) plaintiff was not entitled to declaratory relief. The court explained its rulings were "subject to the caveat that the Plaintiff is entitled to the return of the refundable $20,000.00, with interest, to the extent that interest exceeds $9,483.15, the stipulated amount for which Plaintiff is liable for damages to the roof." The trial court also concluded defendants were entitled to interest on the $200,000 portion of the deposit that remained in escrow. The court stated: "The amount of interest awarded to Defendants shall offset any amounts owed to Plaintiff, but Defendants shall not be entitled to an award of damages in their favor."

Finally, the trial court further stated in the amended statement of decision: "This was not a run-of-the-mill, ordinary purchase of a house. This was a

house right on the beach in Laguna Beach. It was Plaintiff's dream, upon acquiring title to the property, to make major renovations to the structure over a period of time and to get approval of various agencies, which naturally took time." The court observed, "[t]he parties were very sophisticated business-men, especially in real estate."

An amended judgment was entered in favor of defendants, stating: "Of the $620,000 in deposits ('Deposits') paid by Plaintiff toward the purchase of [the property], Defendants are entitled to retain $400,000 of the Deposits previously received. Defendants are also entitled to all of the remaining $220,000 in Deposits paid by Plaintiff to Mariners Escrow in Newport Beach . . . , Defendants are entitled to $200,000 of that deposit and Plaintiff is entitled to the remaining $20,000. However, the $20,000 sum Plaintiff is entitled to[] is reduced and offset completely by (1) the stipulated 'roof repairs' damages of $9,483.15, and (2) interest in the amount of $20,673.97, which is calculated at 7% per annum on the $200,000 of the Deposit that Defendants are entitled to." The amended judgment further provided the escrow company "shall release forthwith to Defendant[s] all of the sums on deposit in the Escrow," plaintiff was responsible for any and all fees owed to the escrow company as a result of the cancellation of escrow, and no attorney fees were awarded to any party.

Plaintiff appealed.

## DISCUSSION

Plaintiff contends the trial court erred by concluding (1) defendants' retention of $600,000 of the total deposit of $620,000 did not constitute an invalid forfeiture under the circumstances of this case, and (2) defendants were entitled to retain the deposit because it constituted separate and additional consideration for extending the length of escrow. For the reasons discussed, *post*, we agree with both of plaintiff's arguments.

### I.

IN A RISING MARKET, THE SELLER OF REAL PROPERTY IS LIMITED
TO THE RECOVERY OF CONSEQUENTIAL DAMAGES AND INTEREST
AGAINST THE BUYER WHO BREACHED THE PURCHASE AGREEMENT.

Civil Code section 3307 provides: "The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest." In determining a seller's damages,

"[c]onsiderations of good or bad faith are not required. The seller's main measure of damages is essentially the difference between the contract price and the property's value at the time of breach." (1 Cal. Real Property Remedies and Damages (Cont.Ed.Bar 2d ed. 2009) § 4.74, p. 353.) "During a period of rising property values, when a seller seeks damages from a defaulting buyer, if the property has increased in value before trial and the seller resells the property at a price equal to or higher than the value of the contract, there are no longer any loss-of-bargain damages." (*Id.*, § 4.75, p. 354.)[3]

II.

Defendants' Retention of Plaintiff's Deposit in the
Circumstance of a Rising Market, Presented Here,
Constituted an Invalid Forfeiture Under *Freedman, Supra*, 37
Cal.2d 16.

In *Freedman, supra*, 37 Cal.2d 16, 18–19, the California Supreme Court addressed circumstances similar to the instant case, involving a seller who sought to retain the downpayment after the buyer breached the purchase agreement in a rising market. In *Freedman*, the buyer agreed to purchase two lots owned by the seller for $18,000. (*Id.* at p. 18.) The buyer paid a $2,000 downpayment and agreed to pay the balance of $16,000 into escrow within 30 days. The buyer later repudiated the agreement in writing and demanded the return of his downpayment. Three weeks later, the buyer wrote to the seller, stating he would take title and would pay the balance of the purchase price as soon as an easement on the property was cleared. The seller cancelled the escrow and sold the property to a third party for $20,000. The buyer thereafter asserted his willingness to purchase the property and sued the seller for specific performance. The trial court entered judgment for the seller. (*Ibid.*)

The Supreme Court stated that the buyer's claims seeking specific performance or damages or both remedies for breach of contract were meritless because the buyer failed to unconditionally withdraw his repudiation of the parties' agreement until after the seller had sold the property to a third party. (*Freedman, supra*, 37 Cal.2d at p. 19.) The Supreme Court concluded, however, that the buyer was entitled to the return of his deposit

---

[3] "Practically, in a rising market, if it is clear that the buyers do not want the property, the seller's best course of action is to simply remarket the property and proceed with an advantageous resale. Consequential damages to the seller are often minimal, and the expenditures are such that they would have been incurred in the second transaction as well." (1 Cal. Real Property Remedies and Damages, *supra*, § 4.75, p. 354 [citing *Royer v. Carter* (1951) 37 Cal.2d 544 [233 P.2d 539]].)

under the circumstances of the case. (*Id.* at p. 23.) The Supreme Court stated: "Since [the seller] resold the property for $2,000 more than [the buyer] had agreed to pay for it, it is clear that [the seller] suffered no damage as a result of [the buyer]'s breach. If [the seller] is allowed to retain the amount of the down payment in excess of its expenses in connection with the contract it will be enriched and plaintiff will suffer a penalty in excess of any damages he caused." (*Id.* at pp. 19–20.)

The Supreme Court in *Freedman* distinguished *Barkis v. Scott* (1949) 34 Cal.2d 116 [208 P.2d 367] and *Baffa v. Johnson* (1950) 35 Cal.2d 36 [216 P.2d 13], which held that a buyer could recover the amount of deposit in excess of the damages he or she caused under Civil Code section 3275, "if his breach was neither wilful, fraudulent, nor grossly negligent." (*Freedman, supra,* 37 Cal.2d at p. 20.) Noting that the trial court in *Freedman* had found the buyer's breach to have been willful, the Supreme Court held that in light of the willfulness of the plaintiff's breach, "[i]t is necessary to consider, therefore, the question left open in the *Baffa* case, namely, whether a vendee under such circumstances may recover the excess of his part payment over the damage he caused the vendor." (*Ibid.,* italics added.) The court stated: "As was pointed out in the *Baffa* case, if the right to restitution rests solely on the provisions of [Civil Code] section 3275, a vendee who has been guilty of a wilful default must be denied relief. We have concluded, however, that the damage provisions of the Civil Code, together with the policy of the law against penalties and forfeitures provide an alternative basis for relief . . . ." (*Ibid.,* italics added.)

The California Supreme Court held that such an alternative basis for relief existed in *Freedman,* stating: "To permit what are in effect punitive damages merely because a party has partially performed his contract before his breach is inconsistent both with section 3294 of the Civil Code limiting the right to exemplary damages and sections 1670 and 1671 dealing with liquidated damages. 'A penalty need not take the form of a stipulated fixed sum; any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.' [Citation.] Such penalties cannot reasonably be justified as punishment for one who wilfully breaches his contract. Not only does section 3294 of the Civil Code express the policy of the law against the allowance of exemplary damages for breach of contract regardless of the nature of the breach [citation], but if a penalty were to be imposed it should bear some rational relationship to its purpose. A penalty equal to the net benefits conferred by part performance bears no such relationship. It not only fails to take into consideration the degree of culpability, but its severity increases as the seriousness of the breach decreases. Thus a vendee who breaches his contract before he has benefited the vendor by part performance suffers no penalty, whereas one

who has almost completely performed his contract suffers the maximum penalty." (*Freedman, supra,* 37 Cal.2d at pp. 21–22, fns. omitted.)

The Supreme Court further stated: "Moreover, to deny the remedy of restitution because a breach is wilful would create an anom[a]lous situation when considered with section 3369 of the Civil Code. That section provides that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . . ,' and precludes the court from quieting the vendor's title unless he refunds the excess of the part payments over the damage caused by the vendee's breach. [Citations.] Unless the same rule is adopted when the vendee seeks restitution, the rights of the parties under identical fact situations will turn on the chance of which one first seeks the aid of the court." (*Freedman, supra,* 37 Cal.2d at p. 22.)

 The Supreme Court concluded that the provision providing the seller's retention of the downpayment was not enforceable even if construed as a liquidated damages provision: "Although such a provision [for liquidated damages] in a contract for the sale of real property is presumptively valid, if the down payment is reasonable in amount [citations], when as in this case the evidence establishes that it would not 'be impracticable or extremely difficult to fix the actual damages' [citation], such a provision may not be enforced as one for liquidated damages. [Citations.]" (*Freedman, supra,* 37 Cal.2d at p. 23.)

The Supreme Court reversed the judgment to the extent it denied the buyer restitution of any part of the downpayment and remanded the matter to the trial court to retry the issue of the amount of the downpayment to which the buyer was entitled. (*Freedman, supra,* 37 Cal.2d at p. 23.) The court explained: "Since a commission of $900 was retained by the broker from the down payment it is clear that [the seller] received from [the buyer] at most $1,100. [The seller] contends, however, that there were other expenses incurred in connection with the escrow that reduced the amount of the down payment received. Since the trial court erroneously concluded that [the buyer] could recover no part of his down payment, no finding was made as to the fraction that accrued to the net benefit of [the seller]. Accordingly, a new trial limited to that issue is appropriate." (*Ibid.*)

Here, it is undisputed that shortly after plaintiff cancelled escrow, defendants sold the property for $1 million more than plaintiff had agreed to pay for the property. Other than damages sustained to the roof in the amount of $9,483.15 during plaintiff's staking of the property, defendants do not argue they sustained any consequential damages as a result of plaintiff's breach.

 Defendants argue the agreement provided plaintiff's deposit would be "non-refundable" and, thus, they are entitled to retain the deposit. Plaintiff's

deposit would have been nonrefundable in a falling market to the extent defendants were able to show damages under Civil Code section 3307. "Without the benefit of a valid liquidated damages clause, the seller may retain the deposit only to the extent that actual damages were incurred according to [Civil Code section] 3307. A deposit, however, can serve as a fund from which the seller obtains whole or partial reimbursement for actual losses. [Citation.] [¶] The seller must refund the excess over actual damages to the buyer, regardless of whether the breach was innocent or willful. [Citation.] This is true whether the buyer paid the deposit directly to the seller or into an escrow account. [Citation.] The deposit gives the seller the practical advantage of shifting the burden to the buyer to show that the seller's retention of the deposit constitutes unjust enrichment." (1 Cal. Real Property Remedies and Damages, *supra*, § 4.69, p. 350 (rev. 8/09).)

In the context of a rising market, which was the circumstance of the instant case, an interpretation of the nonrefundable term of the agreement as precluding the return of plaintiff's deposit above and beyond any damages suffered by defendants as a result of plaintiff's breach would render that provision unenforceable. As discussed *ante*, " 'any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.' " (*Freedman, supra*, 37 Cal.2d at pp. 21–22.)

To construe the term "nonrefundable" as establishing defendants' entitlement to the full deposit without regard to actual damages would essentially create a liquidated damages provision. The parties, however, expressly stipulated that the agreement did not contain a liquidated damages provision, and have not argued otherwise. Defendants argue the nonrefundable deposit term is not tantamount to a liquidated damages provision because the record does not show "the non-refundability of the deposits was contingent upon a breach of the purchase agreement." In any event, even if the nonrefundable deposit language of the agreement could be construed as a liquidated damages provision, the record shows such a provision would be unenforceable because it would fail to meet the requirements of Civil Code section 1677, which provides: "A provision in a contract to purchase and sell real property liquidating the damages to the seller if the buyer fails to complete the purchase of the property is invalid unless: [¶] (a) The provision is separately signed or initialed by each party to the contract . . . ."

We therefore conclude the trial court erred in concluding defendants' retention of the $600,000 portion of the deposit did not constitute an invalid forfeiture.

III.

THE TRIAL COURT ERRED BY CONCLUDING DEFENDANTS WERE
ENTITLED TO PLAINTIFF'S DEPOSIT AS SEPARATE AND ADDITIONAL
CONSIDERATION FOR DEFENDANTS' AGREEMENTS TO EXTEND
ESCROW.

In the amended statement of decision, the trial court stated defendants were entitled to keep "the Deposit or a portion thereof" on the basis it "constitutes separate and additional consideration for extending the time and length [of] keeping escrow open for nine months." The court stated it found "the separate and additional consideration for the escrow being open for nine months is the $620,000.00."

Defendants argue the appellate court's decision in *Horowitz v. Noble* (1978) 79 Cal.App.3d 120 [144 Cal.Rptr. 710] (*Horowitz*) supports the trial court's decision. In *Horowitz*, the parties entered into two separate agreements in each of which the buyers agreed to purchase a lot owned by the sellers. (*Id.* at p. 125.) The parties subsequently entered into yet another agreement which "substantially modified" the terms of the purchase agreement so the buyers would " 'irrevocably disburse[]' " to the sellers the sum of $20,000 in exchange for an extension of the escrow closing date as to the purchase of the second lot. (*Id.* at pp. 126–127.) That agreement also provided that upon the consummation of the purchase of the second lot, the $20,000 disbursement was to be applied to the purchase price. (*Id.* at p. 135.) The purchase of the second lot, however, was not completed, and the trial court awarded the $20,000 disbursement to the sellers. (*Ibid.*)

The appellate court affirmed the trial court's award of the $20,000 disbursement to the sellers, stating: "The parties who entered into the agreement in question herein were sophisticated investors and developers and we can assume they intended the ordinary and common meaning of the words used. Furthermore, the language used in the . . . agreement was unequivocal and explicitly stated that the $20,000 was to be 'irrevocably disbursed,' and there is nothing to indicate in the agreement or in the escrow instructions that plaintiffs or defendants contemplated a default, forfeiture, penalty or any breach of any obligation or that they were even considering liquidated damages. In other words, there was no contingency whatsoever attached to the payment of the $20,000. This payment was simply the consideration paid for defendants' right to extend the date of performance under the original agreement. In no event can the language of said agreement be construed as a

claim for damages for the possible breach of the agreement, and it cannot be argued that when money is 'irrevocably disbursed' it constitutes a void penalty provision under the terms of Civil Code sections 1670 and 1671." (*Horowitz, supra*, 79 Cal.App.3d at p. 136.)

*Horowitz, supra*, 79 Cal.App.3d 120, is distinguishable from the instant case. As in *Horowitz*, after entering into the agreement, the parties subsequently agreed, as memorialized in an acknowledgement of escrow instructions and amended escrow instructions, to change the deposit payment schedule and the escrow closing date. The acknowledgement of escrow instructions reflected a $20,000 increase in the total amount of deposit due by plaintiff from the agreement, but did not provide for a change of the escrow closing date. The amended escrow instructions, signed by the parties thereafter, reflected the parties' agreement to extend the escrow closing date from July 28 (as provided in the agreement) to ultimately September 15, and to *decrease* the total amount of the deposit plaintiff was required to pay to $620,000.

Unlike in *Horowitz, supra*, 79 Cal.App.3d 120, neither the acknowledgement of escrow instructions nor the two sets of amended escrow instructions reflected plaintiff's agreement to make an irrevocable disbursement of funds in exchange for an extension of the escrow closing date. Neither the word "nonrefundable" nor any similar term is contained in any of the amended escrow instructions signed by the parties in this case. The nonrefundable deposit term is contained in the agreement, which cannot constitute separate and additional consideration in support of subsequent agreements to extend the escrow closing date.

■ At oral argument, defendants' counsel argued that in reaching the agreement, defendants agreed to a nine-month escrow as separate and additional consideration for plaintiff's agreement the deposit would be nonrefundable. Therefore, defendants contend, the deposit should remain nonrefundable regardless of the amount of any actual damages sustained by them. As discussed *ante, Horowitz, supra*, 79 Cal.App.3d 120, does not support this proposition. Were we to accept this argument and enforce such a term of an original agreement, we would create an exception that would swallow the rule set forth in *Freedman, supra*, 37 Cal.2d at page 21, prohibiting the enforcement of forfeitures in this context.

The parties cite no other legal authority, and we have found none, which supports the trial court's conclusion that the deposit was properly retained by defendants as separate and additional consideration for their agreement to extend the escrow closing date. For the reasons discussed *ante*, the trial court erred in reaching this conclusion.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court to issue a new and different judgment consistent with this opinion. Appellant shall recover costs on appeal.

Sills, P. J., and Moore, J., concurred.