Filed 3/14/25  Finnegan's Wake v. Hero Mountain CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FINNEGAN'S WAKE, LP, | B333590 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV43065) |
| v. | |
| HERO MOUNTAIN, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anne Richardson, Judge.  Affirmed.

Law Offices of Joel T. Shackelford and Joel T. Shackelford for Plaintiff and Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Marc E. Rohatiner and Benjamin J. Mandel for Defendant and Respondent.

# INTRODUCTION

Finnegan's Wake, LP appeals from the judgment following a court trial where the court ruled in favor of Hero Mountain, LLC and allowed it to retain as liquidated damages $200,000 Finnegan's Wake had paid Hero Mountain under the terms of a real estate purchase agreement.  Finnegan's Wake argues the court erred in finding the liquidated damages provisions of that agreement were enforceable.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Finnegan's Wake and Hero Mountain Enter into a Real Estate Purchase Agreement*

In March 2020 Landmark Properties, a predecessor in interest of Finnegan's Wake, and Hero Mountain entered into a purchase agreement and escrow instructions for the sale by Hero Mountain of a multiunit residential property.  The purchase price in the original agreement was $9,250,000, which was later reduced to $9,150,000.  Landmark Properties agreed to pay a deposit of $200,000 to the escrow company.  The agreement included a liquidated damages provision stating Hero Mountain would retain the deposit if Landmark Properties failed to complete the purchase because of its default.

Landmark Properties and Hero Mountain extended the closing date six times.  On one of those occasions, an amendment to the purchase agreement extended the last day to close escrow to September 25, 2020 and instructed the escrow company to "immediately release to Seller the sum of $100,000.00," provided that the funds deposited in escrow "cleared your bank" and that

2

the escrow company received signed escrow instructions from all parties. After signing this amendment, Landmark Properties assigned its rights under the purchase agreement to Finnegan's Wake.

In October 2020 Finnegan's Wake and Hero Mountain entered into another amendment extending the last day to close escrow to October 26, 2020. Like the September amendment, the October amendment instructed the escrow company to "immediately release to Seller the sum of $100,000.00." The October amendment also stated Finnegan's Wake "acknowledges that should [it] fail to deposit remaining funds required to close escrow by October 26, 2020, ALL released funds—including $100,000 released in this amendment [and] previously released funds of $100,000[ ]—shall be non-refundable to Buyer whether or not the Property ultimately closes escrow. Buyer shall have no recourse to recover such released funds should Buyer not ultimately purchase the Property and Seller shall retain such released Funds. Buyer expressly agrees to NOT, and waives any right TO pursue recovery of such non-refundable funds through any legal action, whether in Superior Court, arbitration, or mediation[,] PROVIDED ESCROW closing is Buyer's default [*sic*]. In the event Seller's [*sic*] is in default deposit will be refundable."

Escrow terminated on November 10, 2020 without closing, and Hero Mountain retained the $200,000 released under the September and October amendments. In November 2021 Hero Mountain sold the property to a different buyer for $9,860,000.

3

B.     *Finnegan's Wake Files this Action and Loses at Trial*

Finnegan's Wake filed this action against Hero Mountain alleging causes of action for breach of contract and money had and received.  Finnegan's Wake sought the return of the $200,000, plus additional damages.  After the trial court denied a motion by Finnegan's Wake for summary judgment, the parties waived their rights to a jury trial, stipulated to the material facts of their dispute, and agreed the only issue for trial was whether Hero Mountain was entitled to retain the $200,000 deposit.  The parties' stipulation stated they reserved all legal arguments related to this issue, including "(a) whether the Deposit became consideration for an extension as opposed to simply an original deposit for liquidated damages and the legal impact of such a determination; and (b) whether [Hero Mountain] may or may not retain the Deposit based on principles of forfeiture and/or unjust enrichment since [Hero Mountain] later sold the subject property for more than the contract price between [the parties]."

In its trial brief Finnegan's Wake argued the October amendment, which made the two $100,000 payments to Hero Mountain nonrefundable and released the funds, was essentially a liquidated damages provision.  Finnegan's Wake contended that provision and the liquidated damages provision in the original purchase agreement were unenforceable because Finnegan's Wake's default did not cause Hero Mountain any damages.  Instead, Finnegan's Wake claimed, Hero Mountain sold the property for $710,000 more than Finnegan's Wake had offered.  Finnegan's Wake relied on *Kuish v. Smith* (2010) 181 Cal.App.4th 1419 (*Kuish*), where the court held unenforceable, "[i]n the context of a rising market," a provision in a real estate purchase agreement precluding the return of a

4

buyer's deposit "beyond any damages suffered by [the seller] as a result of [the buyer's] breach." (*Id.* at p. 1429.) Finnegan's Wake also argued that, even if the trial court construed the September and October amendments as consideration to extend the escrow period, "punitive damages" cannot flow from a breach of contract, and allowing Hero Mountain to retain the disputed $200,000 would essentially punish Finnegan's Wake.

Hero Mountain argued the liquidated damages provision in the original purchase agreement was enforceable unless Finnegan's Wake could show it was unreasonable under the circumstances at the time the parties agreed to it. Hero Mountain argued the provision was reasonable because, at the time the parties entered into the agreement, there was no way to know whether the real estate market would go up or down. Hero Mountain argued *Kuish* was distinguishable because it did not involve a liquidated damages provision. Alternatively, Hero Mountain argued the September and October amendments were enforceable as separate consideration for the two escrow extensions.

The trial court ruled in favor of Hero Mountain. The court found the liquidated damages provision in the original purchase agreement reasonable as a matter of law because Finnegan's Wake, which had the burden to show it was unreasonable, did not offer any evidence the provision was unreasonable. The court also agreed with Hero Mountain the rule in *Kuish* did not apply because the agreement in that case did not include a liquidated damages clause. Because the court concluded Hero Mountain could retain the $200,000 deposit as liquidated damages, it did not address Finnegan's Wake's argument Hero Mountain could not retain the payment as

5

consideration to extend the escrow period. The court entered judgment for Hero Mountain, and Finnegan's Wake timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

"The objective of a liquidated damages clause is to 'stipulate . . . a pre-estimate of damages in order that the [contracting] parties may know with reasonable certainty the extent of liability' in the event of breach." (*El Centro Mall, LLC v. Payless ShoeSource, Inc.* (2009) 174 Cal.App.4th 58, 63; see *Graylee v. Castro* (2020) 52 Cal.App.5th 1107, 1114 [liquidated damages are a sum a contracting party agrees to pay for breach of a contractual obligation].) Civil Code section 1676[1] provides that "a provision in a contract to purchase and sell real property liquidating the damages to the seller if the buyer fails to complete the purchase of the property is valid if it satisfies the requirements of Section 1677[2] and the requirements of subdivision (b) of Section 1671." Finnegan's Wake does not argue the liquidated damages provision in the purchase agreement did not comply with section 1677; thus, the only issue is whether it complied with section 1671, subdivision (b).

---

[1]    Section 1676 applies to residential properties consisting of more than four units, like the property in this case. (See §§ 1675, subd. (a), 1676.) Statutory references are to the Civil Code.

[2]    Section 1677 requires a liquidated damages provision to be separately signed or initialed by each party and "set out either in at least 10-point bold type or in contrasting red print in at least eight-point bold type."

6

Section 1671, subdivision (b), provides that, except in circumstances not relevant to this case, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." The statute "'gives the parties considerable leeway in determining the damages for breach. All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. Other relevant considerations in the determination of whether the amount of liquidated damages is so high or so low as to be unreasonable include, but are not limited to, such matters as the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving causation and foreseeability, and whether the liquidated damages provision is included in a form contract.'" (*El Centro Mall, LLC v. Payless ShoeSource, Inc.*, *supra*, 174 Cal.App.4th at p. 63; see *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 [a liquidated damages clause is unreasonable "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach"]; *Graylee v. Castro*, *supra*, 52 Cal.App.5th at pp. 1114-1115 [same]; *Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 722 [a liquidated damages clause may be invalid "if the parties' estimate of damages resulting from a contract breach is outside

7

the range of reasonableness, either too high or too low, in light of the circumstances known at the time of the estimate"].)

"'[T]he burden of proof on the issue of reasonableness is on the party seeking to invalidate the liquidated damages provision.'" (*El Centro Mall, LLC v. Payless ShoeSource, Inc.*, *supra*, 174 Cal.App.4th at p. 63; accord, *Krechuniak v. Noorzoy*, *supra*, 11 Cal.App.5th at p. 721.) "In determining the reasonableness of a provision for liquidated damages, 'the court should place itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably foreseeable.'" (*Krechuniak*, at pp. 722-723; see *Better Food Markets, Inc. v. American Dist. Tel. Co.* (1953) 40 Cal.2d 179, 185.) An appellate court independently reviews the validity of a contractual provision under section 1671, subdivision (b), where, as here, the facts are undisputed and lead to one reasonable conclusion. (*Krechuniak*, at pp. 722-723; see *Better Food Markets*, at pp. 185-186 [the question of reasonableness "becomes one of law where the facts are not in dispute and admit of but a single conclusion"].)

B.     *The Trial Court Did Not Err in Ruling the Liquidated Damages Provision Was Reasonable and Enforceable*

Finnegan's Wake did not introduce any evidence regarding the circumstances at the time the parties to the purchase agreement agreed to the liquidated damages provision, as required to meet its burden of proof. Instead, Finnegan's Wake argued in the trial court and argues on appeal that circumstances *after* the parties entered into the agreement—namely, the rise in the market for real estate—rendered the liquidated damages

8

provision unreasonable. Because that circumstance is not relevant to determining whether the provision was reasonable at the time the parties entered into it, the trial court properly rejected this argument. (See *Krechuniak v. Noorzoy*, *supra*, 11 Cal.App.5th at p. 722; *El Centro Mall, LLC v. Payless ShoeSource, Inc.*, *supra*, 174 Cal.App.4th at p. 63.)

Instead of acknowledging the test for reasonableness under section 1671, subdivision (b), Finnegan's Wake argues we should apply the two-part test set forth in *Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc.* (2006) 135 Cal.App.4th 1023 to determine the validity of the liquidated damages provision: (1) "fixing the amount of actual damages [must] be impracticable or extremely difficult" and (2) "the amount selected must 'represent a reasonable endeavor by the parties to estimate fair compensation for the loss sustained.'" (*Id.* at p. 129.) *Utility Consumers' Action Network*, however, concerned a consumer services contract governed by section 1671, subdivision (d), not a contract to purchase real property governed by sections 1676 and 1671, subdivision (b). (See § 1676 [liquidated damages provisions in contracts to purchase and sell real property must meet the requirements of section 1671, subdivision (b)]; § 1671, sub. (c)(1) [liquidated damages provisions in consumer contracts must comply with section 1671, subdivision (d)]; *Utility Consumers' Action Network*, at pp. 1028-1029 [when a liquidated damages provision is contained in a consumer contract or a residential lease, section 1671, subdivision (d) applies].)

Finnegan's Wake also states "allowing a seller to retain the deposit of a defaulting buyer in a rising market would constitute an illegal forfeiture." As it did in the trial court, Finnegan's

Wake cites *Kuish, supra*, 181 Cal.App.4th 1419, where the buyer of residential real estate canceled escrow, the seller "promptly" sold the property for $1 million more than the buyer had agreed to pay, and the seller retained the buyer's $620,000 deposit. (*Id.* at p. 1422.) The court in *Kuish* held the seller could not retain the deposit under section 3307, which calculates damages for breach of a real estate purchase agreement as "'the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest.'" (*Kuish*, at p. 1425.) Thus, under the circumstances in *Kuish*, where "'the seller resells the property at a price equal to or higher than the value of the contract, there are no longer any loss-of-bargain damages.'" (*Kuish*, at p. 1426.)

But because the real estate purchase agreement in *Kuish* did not include a liquidated damages provision, the court in *Kuish* had no reason to apply section 1671, subdivision (b). (See *Kuish, supra*, 181 Cal.App.4th p. 1429 [the parties "stipulated that the agreement did not contain a liquidated damages provision"].) Instead, the court in *Kuish* applied section 3307, which concerns damages arising from the breach of a real estate purchase agreement in general, not where the agreement includes a liquidated damages provision. Because the more specific section 1671, subdivision (b), takes precedence over the more general section 3307, we apply section 1671, subdivision (b), to the liquidated damages provision in this case. (See § 1859 ["when a general and particular provision are inconsistent, the latter is paramount to the former"]; *Gramajo v. Joe's Pizza on Sunset, Inc.* (2024) 100 Cal.App.5th 1094, 1103 ["when two

10

statutes conflict, a specific statute will take precedence over a general one"].)

Finnegan's Wake further suggests that, because its predecessor Landmark Properties entered into the original purchase agreement with Hero Mountain, Finnegan's Wake never anticipated or calculated reasonable damages resulting from a potential default. As Hero Mountain points out, however, Finnegan's Wake forfeited this argument by not raising it in the trial court. (See *Westsiders Opposed to Overdevelopment v. City of Los Angeles* (2018) 27 Cal.App.5th 1079, 1091 [appellate court will not consider "issues or theories not properly raised or presented in the trial court"]; *Krechuniak v. Noorzoy*, *supra*, 11 Cal.App.5th at p. 725 [party may not raise a new theory on appeal].)

The argument also fails on the merits. Finnegan's Wake accepted the obligation to pay liquidated damages under the original agreement when it accepted the benefits of that agreement as Landmark Properties' assignee, including the right to buy the property for $9,150,000. (See § 1589 ["voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting"]; *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 136 ["an assignee's voluntary acceptance of the benefits of a contract may obligate the assignee to assume its obligations as a matter of law, even if the assignment agreement expressly *excludes* the obligations"];[3] *Unterberger v. Red Bull*

---

[3] The assignment from Landmark Properties to Finnegan's Wake is not in the record.

11

*North America, Inc.* (2008) 162 Cal.App.4th 414, 421 ["an assumption of obligations may be implied from the acceptance of benefits under a contract . . . 'so far as the facts are known, or ought to be known, to the person accepting'"]; *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1289 ["an assumption of obligations may be implied from acceptance of benefits under the contracts"].) Moreover, Finnegan's Wake argued in the trial court the October amendment constituted a liquidated damages provision because it precluded Finnegan's Wake from contesting the deposit's release in the event Finnegan's Wake defaulted. Thus, even if Finnegan's Wake were not bound by the liquidated damages provision in the original purchase agreement, it acceded to the same obligation to pay liquidated damages under the October amendment, which Finnegan's Wake (not Landmark Properties) negotiated, and which Finnegan's Wake did not show was unreasonable under section 1671, subdivision (b). Thus, Finnegan's Wake was bound by the liquidated damages provision in both the purchase agreement and under Finnegan's Wake's interpretation of the October amendment.[4]

---

[4] Finnegan's Wake argues for the first time on appeal the Supreme Court in *Ridgley v. Topa Thrift & Loan Assn.*, *supra*, 17 Cal.4th 970 held a party cannot enforce a liquidated damages provision against an assignee who did not have a relationship at the time of contracting with the party attempting to enforce the provision. In addition to forfeiting this argument, Finnegan's Wake misreads *Ridgley*, which made clear the relevant relationship is between the amount set as liquidated damages and an estimate of the "'fair average compensation for any loss.'" (See *id.* at p. 977.) The rule Finnegan's Wake suggests could

12

In connection with its common count for money had and received, Finnegan's Wake argues Hero Mountain cannot keep the $200,000 as liquidated damages because deposits by potential buyers "in the context of claims for money had and received" are "for the benefit of the buyers." Merely attaching the label of "money had and received" to its claim for the return of the $200,000, however, does not exempt the claim from section 1671, subdivision (b). (See *Camden Systems, LLC v. 409 North Camden, LLC* (2024) 103 Cal.App.5th 1068, 1082 [common count for money had and received is not a specific cause of action; rather, it is a simplified form of pleading normally used to allege various forms of monetary indebtedness]; *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1399 [courts are "unconcerned with the label attached to a cause of action when a party seeks relief from" a liquidated damages provision].) Finnegan's Wake still had to show the liquidated damages provision was unreasonable under section 1671, subdivision (b), to prove it was unenforceable. (See *Drew v. Pedlar* (1891) 87 Cal. 443, 450 [applying former section 1671 to an action for money had and received based on an alleged breach of contract]; *Cook v. King Manor & Convalescent Hospital* (1974) 40 Cal.App.3d 782, 788 [same]; *McInerney v. Mack* (1917) 34 Cal.App. 153, 154 [same]; see also *Freedman v. St. Matthias Parish* (1951) 37 Cal.2d 16, 21-22 [considering whether the enforcement of a liquidated

---

allow assignees to avoid enforcement of any liquidated damages provision entered into before an assignment.

damages provision was consistent with former section 1671].)[5] Finnegan's Wake did not make that showing.

## DISPOSITION

The judgment is affirmed.  Hero Mountain is to recover its costs on appeal.


SEGAL, J.


We concur:


MARTINEZ, P. J.


FEUER, J.

---

[5]     These cases applied an earlier version of section 1671, which presumed liquidated damages provisions in certain commercial contexts were invalid.  (See *El Centro Mall, LLC v. Payless ShoeSource, Inc.*, *supra*, 174 Cal.App.4th at pp. 62-63 [discussing the Legislature's 1977 amendments to section 1671]; see also *Krechuniak v. Noorzoy*, *supra*, 11 Cal.App.5th at p. 722, fn. 7.)  That the Legislature amended section 1671 to essentially reverse that presumption does not affect the provision's application in this case.