[No. G030264. Fourth Dist., Div. Three. Apr. 2, 2003.]

HARBOR ISLAND HOLDINGS, L.L.C., Plaintiff and Appellant, v. JAMES Y. KIM et al., Defendants and Respondents.

## Counsel

Barnes, Crosby, FitzGerald & Zeman, Michael J. FitzGerald, Larry S. Zeman and Eric P. Francisconi for Plaintiff and Appellant.

Kwak, Kim & Park, William H. Y. Park, Michael Schillaci and Linda Kim for Defendants and Respondents.

## OPINION

**MOORE, J.**—A landlord, displeased with its tenant, reluctantly agreed to a lease extension requiring greatly increased rental payments. The landlord demanded one price if the tenant complied with the lease agreement in every regard and double that amount in the event of any breach. After the conclusion of the extended lease term, the landlord sued the tenant, seeking both damages occasioned by the tenant's failure to properly maintain the premises, plus nearly a quarter of a million dollars for the doubled rent. The trial court awarded damages for the failure to maintain the property, but held the lease provision for the doubled rent was unenforceable as a penalty. The landlord appeals. We agree with the trial court's reasoning and affirm.

I

### FACTS

Harbor Island Holdings, L.L.C. (Harbor Island) leased certain commercial property, located in Torrance, California, to E & J Textile Group, Inc. (E & J) and James Y. Kim (Kim). The original lease term was from July 1, 1996, through June 30, 1999. E & J and Kim had contemplated moving to new premises at the end of the original lease term. However, the construction of the new premises was not completed on time, so they sought a lease extension. On March 31, 1999, the parties agreed to a three-month extension, ending September 30, 1999.

Under the original lease, the rent was $30,974.40 per month. The rent jumped to $96,364.80 per month under the lease amendment. Under the amendment, half of the monthly rent, or $48,182.40, would be conditionally "deferred" and ultimately forgiven if E & J and Kim complied with all of their obligations under the amended lease.

At the end of the extended lease term, E & J's new premises still had not been completed and Harbor Island agreed to extend the lease for another two months. E & J and Kim vacated the premises on November 30, 1999.

Harbor Island filed suit against E & J and Kim. Among other things, it alleged E & J and Kim had breached their obligation to maintain and repair the premises. It also alleged they had failed to pay base rent in the amount of $240,912. This amount was equal to $48,182.40 per month for the period of July 1, 1999, through November 30, 1999—a recapture of the deferred portion of the monthly rent that Harbor Island had not forgiven at the end of the extended lease term. The complaint listed causes of action for breach of

lease, quantum meruit, open book account, account stated, negligence and waste.

E & J and Kim filed a cross-complaint, seeking the return of their security deposit. They later filed a motion for summary adjudication of issues. Among other things, they argued the deferred rent provision was illegal as a penalty, and therefore unenforceable. The motion was denied as to that issue.

A jury trial was had. Pursuant to the special verdict, the jury found that E & J and Kim had failed to maintain or repair the leased premises in accordance with the lease provisions. It further found that the damage to Harbor Island on account of this breach was $13,970. In addition, the jury found that Harbor Island had breached the lease by failing to return the security deposit to E & J and Kim. The amount of the security deposit was $48,182.40. The jury concluded that E & J and Kim had been damaged in the amount of $37,633.60. That amount was equal to the $48,182.40 security deposit minus the $13,970 in damages for the failure of E & J and Kim to maintain or repair the premises, plus prejudgment interest.

Judgment in the amount of $37,633.60, plus interest, attorney fees and costs, was entered in favor of E & J and Kim. Harbor Island filed this appeal.

II

ANALYSIS

A. *Standard of Review*

■ Harbor Island correctly contends that the standard of review is de novo. Whether an amount to be paid upon breach is to be treated as liquidated damages or as an unenforceable penalty is a question of law. (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1393 [1 Cal.Rptr.2d 446].) We review questions of law de novo. (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5 [77 Cal.Rptr.2d 581]; see also *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [100 Cal.Rptr.2d 718] [de novo review when statutory standard applied to undisputed facts].)

B. *Summary Adjudication*

■ Harbor Island complains at some length that the trial court "reversed itself" during the course of the proceedings, having ruled one way on the

summary adjudication motion and inconsistently later on. Harbor Island has difficulty articulating any error associated with the "reversal," but makes plain that it feels aggrieved.

In its February 21, 2001 minute order denying summary adjudication of the legality of the deferred rent provision, the court stated that it "[declined] to find that the deferred rent [was] an illegal form of liquidated damages." Harbor Island having failed to prepare a formal order on the matter as requested, the court ultimately prepared a second minute order, dated July 13, 2001. In the second order, the court stated: "The court finds that the deferred rent sought by Harbor Island is not an illegal form of liquidated damages based on the evidence submitted to the court. The court finds there is a triable issue of fact as to whether the contract between the parties constituted an illegal form of liquidated damages or a rental inducement."

Later still, at a pretrial hearing held on October 22, 2001, the court stated that, having read *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970 [73 Cal.Rptr.2d 378, 953 P.2d 484], it had come to conclude that whether the deferred rent provision constituted a valid liquidated damages clause or an unenforceable penalty was a question of law for determination by the court. The court acknowledged the inconsistency with its prior ruling on the point, but having concluded, on reflection, that it should determine the issue as a matter of law, it did so. It held the deferred rent provision was invalid.

As best we can ascertain, Harbor Island complains primarily because it believes it would have fared better with the jury. Whether that is true or not is irrelevant. The validity of the deferred rent provision was a question for the judge to decide. (*Beasley v. Wells Fargo Bank, supra,* 235 Cal.App.3d at p. 1393.)

To the extent Harbor Island's complaint may be based on the notion that the trial court cannot "reverse itself" before trial, it cites no authority for that proposition. However, we observe the doctrine of law of the case is inapplicable in trial court proceedings. (*AT&T Communications, Inc. v. Superior Court* (1994) 21 Cal.App.4th 1673, 1680 [26 Cal.Rptr.2d 802].)

*C. Civil Code Section 1671*

The validity of the deferred rent provision is determined under Civil Code section 1671. Subdivision (b) thereof provides: "[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the

provision was unreasonable under the circumstances existing at the time the contract was made."

■ Our Supreme Court has enunciated standards for the application of Civil Code section 1671. In *Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th at page 977, it stated: "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671[, subdivision] (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.' [Citation.]"

■ Here, the original base rent was in the amount of $30,974.40 per month. Under the lease extension, the monthly rent became $48,182.40, so long as E & J and Kim complied with all of their obligations under the amended lease. This was an increase of more than 55 percent. If E & J and Kim committed a breach of their lease obligations, the monthly rent would skyrocket to $96,364.80. In other words, in the event of breach, any breach, the rent would more than triple.

Harbor Island argues that "[b]efore the Court's reversal of its legal findings, Harbor Island was required to prove only that E & J had breached its lease in *any* manner in order to recover the deferred rent." Harbor Island gives a number of examples of the type of breach it could have used to show entitlement to the $240,912 it claimed in deferred rent. One of those examples is, "Failing to obtain and provide Harbor Island with copies of maintenance contracts to maintain certain critical aspects of the property." We are at an absolute loss to imagine how $48,182.40 per month, ultimately totaling $240,912 for the period in question, could have represented "the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained" for the failure to provide copies of maintenance contracts.

Moreover, Harbor Island was not without remedy in the event of a breach of the covenant to maintain and repair the premises. The lease enumerated certain remedies available on breach and provided as well that Harbor Island was entitled to pursue any other remedies permitted by law. Harbor Island undertook that pursuit and the jury determined Harbor Island was entitled to $13,970 in compensation for maintenance and repair damages. Thus, the

lease provisions concerning default remedies served to fully compensate Harbor Island with respect to the breach of the covenant of maintenance and repair, without resort to the collection of an additional $240,912 in damages, as a penalty.

■ " 'A penalty provision operates to compel performance of an act [citation] and usually becomes effective only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citations.]' [Citation.]" (*Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th at p. 977.) ■ Here, the lack of a proportional relationship between the $240,912 amount sought and the actual damages Harbor Island suffered on account of the breach of the covenant to maintain and repair could not be more obvious.

Harbor Island contends this analysis misses the boat entirely. As it states in its opening brief, the $240,912 "amount is not at all based on any approximation of damages or in place of an approximation of damages, as would be a liquidated damages clause. It is, instead, the recovery of the full amount of the agreed-upon rent, or the *actual damages.*" (Italics in original.) So, Harbor Island admits that there was no intent to approximate damages, as would be required for the clause to be held a valid liquidated damages clause. It argues instead that the $240,912 is just scheduled rent that it would have forgiven had E & J and Kim performed every single obligation under the lease, but because they caused $13,970 in damages due to the failure to maintain and repair, the $240,912 would not be forgiven.

Underlying this argument is the unspoken point that, had every lease obligation been performed to the "T," Harbor Island would have received full and fair compensation for the use of the premises for only $48,182.40 per month. In other words, it was perfectly willing to rent the property at that price, but upon the slightest imperfection in the performance of E & J and Kim, it wanted nearly a quarter of a million dollars more for the same period of time.

Harbor Island stresses the fact that it was none too anxious to extend the lease term, since E & J and Kim had been in breach in the past. Indeed, the lease amendment contained a statement to the effect that Harbor Island was agreeing to the extension as an accommodation for, and at the behest of, E & J and Kim. It also stated: "Inasmuch as Lessee has previously defaulted in its

obligations under the Lease, Lessee acknowledges that Lessor is incurring a substantial risk in foregoing the further marketing of the Premises for lease to a new tenant, in favor of continuing the occupancy of Lessee as described in this Amendment."

In consideration of this risk, the lease amendment contained a security feature that all parties omit to mention. It provided for the $48,182.40 per month rental for the three-month lease extension to be prorated over five months, beginning April 1, 1999, and ending August 1, 1999. In other words, E & J and Kim actually were required to begin paying $28,909.44 per month for the lease extension three months before it began and ending nearly two months before the extended term expired. Assuming the lease payments were indeed made in this manner, this, in effect, provided substantial security to Harbor Island for the lease extension. But Harbor Island wanted more.

Harbor Island needed to have $96,364.80 per month hanging over the heads of E & J and Kim in order to feel secure that they would indeed perform. This approach overlooks certain settled law on penalty provisions. " 'If the sum extracted from the [obligor] is designed to exceed substantially the damages suffered by the [obligee], the provision for the additional sum, whatever its label, is an invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt payment through the threat of imposition of charges bearing little or no relationship to the amount of the actual loss incurred . . . .' [Citation.]" (*Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th at p. 981, fn. omitted.)

Harbor Island insists the actual loss was the amount of the rent that was conditionally deferred in anticipation of perfect performance. It was entitled to collect $96,364.80 per month in the event of imperfect performance, and E & J and Kim had breached the lease, so the entitlement was triggered. E & J and Kim having paid only $48,182.40 per month to date, there was a shortfall of $240,912 in the amount that had been paid. While Harbor Island would have waived, or forgiven, the $240,912 in the event there had been no breach of any nature, it would not waive the amount because there had been a breach, causing $13,970 in damages.

This type of circular reasoning was expressly rejected in *Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th 970. There, the court exposed the double talk of a "conditional waiver" of certain prepayment charges in a loan agreement. ▇ "A forfeiture or unreasonable penalty, imposed only upon the other party's default, is unenforceable even though the same money,

property or other consideration might have validly been bargained for as a form of contractual performance. A contrary conclusion would allow unreasonable late charges and other penalties to escape legal scrutiny through simple rephrasing as a conditional waiver. Under [the lender's] 'conditional waiver' theory, virtually any penalty or forfeiture could be enforced if characterized as a waiver. To accept that theory would be to 'condone a result which, although directly prohibited by the Legislature, may nevertheless be indirectly accomplished through the imagination of inventive minds.' [Citation.] We will not do so." (*Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th at p. 982; see also *Fox Chicago R. Corp. v. Zukor's* (1942) 50 Cal.App.2d 129 [122 P.2d 705] [bargained-for retroactive rental increase due on breach characterized as a penalty].)

## D. *Commercial Leasing and Public Policy Considerations*

The fact that this was a commercial lease negotiated by seasoned business entities, not a consumer lease between unsophisticated individuals, has no bearing on the result. The court in *Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th 970, addressed the suggestion that "a different set of rules [should] apply because [it] was an 'arm's-length commercial transaction.' [Citation.]" (*Id.* at p. 981, fn. 5.) It dispelled that notion, stating, "That [the obligors] are . . . business owners rather than consumers, however, does not deprive them of section 1671's protection against unreasonable penalties . . . ." (*Ibid.*)

Finally, Harbor Island asserts that the court cannot quell its efforts to collect the additional $240,912, because rental inducements of this sort are widely used in the commercial leasing industry and public policy favors freedom of contract in commercial leases. Even assuming the rental inducement device utilized here is commonly employed in the commercial leasing industry, that does not make it legal in this particular context. As far as the public policy argument goes, Harbor Island cites Civil Code section 1995.270, enacted in response to certain case law pertaining to standards for a landlord's consent to the transfer of a tenant's interest in the lease. Section 1995.270, subdivision (a)(1) provides that "[i]t is the public policy of the state and fundamental to the commerce and economic development of the state to enable and facilitate freedom of contract by the parties to commercial real property leases." However, it is no less the policy of this state that any provision for the forfeiture of money or property without regard to the actual damage suffered constitutes an unenforceable penalty. (*Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th at pp. 977-978.)

## III

### Disposition

The judgment is affirmed. E & J and Kim shall recover their costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.