Filed 5/12/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AISHA A. KRECHUNIAK, as Trustee, etc., <br><br>     Cross-Complainant and Respondent, <br><br> v. <br><br> ZIA JAMAL NOORZOY, <br><br>     Cross-Defendant and Appellant. | H042740 <br> (Monterey County <br> Super. Ct. No. M100205) |

## I. INTRODUCTION

This appeal challenges an order enforcing an agreement between two siblings, Aisha A. Krechuniak ("Sister")[1] and her brother Zia Jamal Noorzoy ("Brother"), settling litigation concerning the failed development of a residential parcel in Pebble Beach. Sister was awarded a stipulated judgment of $850,000.00 against Brother as provided in their "MEMORANDUM OF SETTLEMENT."  Brother's appeal contends that this amount includes a liquidated damages penalty of $250,000.00 that is unenforceable under Civil Code section 1671, an argument he did not make in the trial court.[2]

We will affirm the judgment after concluding that Brother has forfeited his fact-based contention.  In doing so we hold that the determination of whether a contract provision is an illegal penalty or an enforceable liquidated damage clause is a question to

---

[1]  Though Sister is a party as an individual and as trustee of the Krechuniak, Aisha A. 2001 Trust, for simplicity we will refer to her as Sister without differentiating her roles.

[2]  Unspecified section references are to the Civil Code.

be determined by the trial court and, on review, appellate deference to the trial court's factual findings is required unless the facts are undisputed and susceptible of only one reasonable conclusion.

## II. THE FACTS

### A. THE LAWSUITS

According to Sister's cross-complaint filed August 31, 2010, Sister owned realty at 952 Sand Dunes Road in Pebble Beach, California (sometimes "the subject property") in 2005.[3] Brother was a licensed real estate agent working for Alain Pinel and was also a land developer. In July 2005, Brother and Sister entered a written contract under which Brother would develop Sister's property through funding from investors and then sell the developed property, with Brother and Sister to split the profits remaining after paying off investors and after paying $1.5 million to Sister, reflecting her equity in 2005, and $30,000 to Brother as a management fee.

In January 2006, Brother entered separate "investor rights agreement" with Andrew Dieden and Jeffrey Dieden. Each agreed to contribute $100,000.00 towards development of the subject property, estimated to be completed by the end of 2006 at a cost of $700,000 and with a net profit of $810,000 after sale of the property.[4]

In June 2006, Sister obtained a loan of $815,000.00 from the Bank of America secured by a first deed of trust on the subject property. In December 2006, Sister obtained a loan of $193,000.00 from Indy Mac Bank secured by a second deed of trust on

---

[3] Sister's cross-complaint was not part of the record on appeal until this court granted Sister's motion to augment the record on July 6, 2016. This factual background is limited by the record on appeal primarily to allegations in pleadings.

[4] The investor agreements are attached to an amended complaint filed by the Diedens on April 12, 2010. This action was initiated by Andrew Dieden's original complaint filed on July 23, 2009. Jeffrey Dieden filed a separate action the same day, which was consolidated with this action before they filed the amended complaint. Brother is the only named defendant in that complaint. The Diedens are not parties to this appeal.

2

the property. Brother was to use the proceeds of both loans to develop the property and to make mortgage payments.

In September 2007, Brother obtained $300,000 from investors to complete the development and pay off the Indy Mac loan. The money was not used for those purposes.

In November 2008, Sister agreed to relinquish ownership of another Pebble Beach property at 2889 17 Mile Drive ("the second property"), co-owned with Brother and another relative, so that Brother could obtain a loan of $400,000.00 secured by that property. Brother was to use the proceeds of that loan to develop the subject property and to make mortgage payments.

Sister was unaware that Brother had defaulted on the loans and was receiving mortgage default notices. Because he did not make the mortgage payments on the subject property, it was sold at foreclosure. Sister also incurred a $400,000 debt on the second property.

The investors sued Brother for loss of their investments through foreclosure on the subject property. In her cross-complaint, Sister sought actual damages in excess of $1.7 million and punitive damages for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, negligent and intentional misrepresentation, and intentional infliction of emotional distress.

According to a statement by Brother's attorney in opposition to enforcing the settlement, Brother and his wife filed for bankruptcy on November 10, 2011. On April 4, 2012, the federal bankruptcy court granted Sister relief from the automatic stay to pursue her state causes of action for "Breach of Fiduciary Duty, Conversion, Fraud, and Intentional Infliction of Emotional Distress," but not her other causes of action.

### B. THE MEMORANDUM OF SETTLEMENT

With trial set for November 17, 2014, mediation on November 6, 2014 resulted in a self-titled "MEMORANDUM FOR SETTLEMENT" signed by each party and by a representative of Brother's employer, Pinel, that stated:

3

"1. This MEMORANDUM OF SETTLEMENT is, and is intended to be, fully binding and enforceable as to each party notwithstanding that a more formal agreement is to be prepared. Any disputes in the formal agreement shall be brought to Richard M. Silver, who absent agreement, shall have binding authority to resolve.

"2. [Brother] shall pay to [Sister] the total sum of $600,000.00 payable as follows:

"a. $100,000.00 no later than December 31, 2014;

"b. [Brother agreed to pay the balance with 10 percent of his net real estate commissions beginning in April 2015. His employer promised to prepare and forward to Brother's counsel checks reflecting 10 percent of Brother's commission payments to be endorsed by Brother to Sister.]

"c. The balance of $500,000.00 shall be paid in no more than five years from January 1, 2015.

"d. Payment may be made sooner than the above without penalty.

"e. No interest shall accrue on the above amounts.

"3. A stipulated judgment against [Brother] in the amount of $850,000 shall be executed and held unless and until there is a default in payment. Should there be a levy or garnishment by a governmental agency that prevents payment of the 10% portion said levy or garnishment shall not be considered a default. The settlement and stipulated judgment shall be non-dischargeable in bankruptcy.

"4. PINEL agrees to structure the 10% commission payments as indicated above but assumes no liability if [Brother] refuses to make any such payment.

"5. Plaintiffs shall execute a general release with CC 1542 waivers as to [Brother] and PINEL. Once executed a dismissal with prejudice shall be filed as to PINEL and, once full payment is made, as to [Brother].

"6. This settlement is subject to approval of the bankruptcy court.

"7. This MEMORANDUM OF SETTLEMENT shall be enforceable pursuant to CCP 664.6. The prevailing party shall be entitled to attorney fees and costs.

"8. Each party shall pay their own fees and costs except as to any prior agreement as to [Brother] and PINEL.

4

"9. This settlement shall be confidential."

## C. POST-SETTLEMENT PROCEEDINGS

In furtherance of the settlement memorandum, on December 3, 2014, Sister's counsel sent her a "settlement agreement and release" drafted by Brother's counsel. The proposed settlement agreement recited as part of paragraph 3.3, "A stipulated judgment against [Brother] in the amount of $850,000 shall be executed and held unless and until there is a default in payment." The proposed settlement agreement also included the following paragraph.

"3.4 The parties agree that the stipulated sum of said Judgment does not constitute a 'penalty' within the meaning of Greentree Financial Group. Inc. v. Execute Sports. Inc. (2008) 163 [Cal.App.4th] 495 [(*Greentree* )] for several reasons, including but not limited to the following: The stipulated sum represents less the value of the property [*sic*] located at 952 Sand Dunes, Pebble Beach, CA, Assessor's Parcel Number 007252015, at the time [Sister] entered into her agreement with [Brother]. It does not include lost profits from the development of that property, interest on the money lost, nor the value of the property lost at 2889 17 Mile Drive, Pebble Beach, CA. Additionally, [Sister] further relinquished her right to trial during which she reasonably expected to achieve a verdict in excess of the stipulated sum. [Sister] agrees to accept substantially less in settlement as an act of kindness towards a family member in order accommodate [Brother]'s attempt to maintain his business and home, as well as the sake of his children. Said Stipulated Judgment is designed to encourage [Brother] to make his settlement payments on time and to compensate [Sister] for the loss of use of the money, her relinquishment of valuable rights and claims for which a substantial likelihood of success exists."

On December 23, 2014, Brother proposed several modifications of their settlement, asserting through counsel that the settlement was no longer binding on him because Sister had breached the confidentiality provision by making statements in another action. Specifically, on December 3, 2014 at a hearing in a probate case, Brother stated to the court that Sister, as executor of their mother's will, had her daughter drop off

5

a box of personal property without offering an explanation of missing items due to him under the will. Sister responded that she had provided a written explanation for each item but did not wish to speak with Brother "in that there has been ongoing litigation with a piece of property and fraud is involved." The court directed them to talk about the missing items outside the courtroom. According to Brother's attorney, in the courtroom hall Sister refused to discuss the estate property, saying in earshot of other attorneys and parties, " 'I won't talk with a liar and a thief.' "

Based on these alleged breaches of the confidentiality of the settlement, Brother's counsel by email proposed four changes to their settlement, namely reducing Brother's total obligation to $500,000, eliminating his payment of $100,000 by December 31, 2014, requiring Sister to pay $100,000 if she breached the confidentiality clause a second time, and canceling Brother's remaining obligation if Sister breached the clause a third time.

Brother's counsel drafted a revised settlement agreement that did not include all these proposals. He proposed maintaining Brother's obligation at $600,000 while eliminating his initial payment of $100,000. The revision preserved paragraph 3.4 quoted above as paragraph 3.5 and the provision for a stipulated judgment of $850,000 to be "executed and held unless and until there is a default in payment." The revision proposed increasingly severe financial penalties for each breach by Sister of the confidentiality provision and prohibited Sister from disparaging Brother. Sister's counsel informed Brother's counsel that the penalty provisions were unacceptable to Sister.

According to a declaration by Sister's counsel dated June 29, 2015, Brother did not make the $100,000.00 payment or sign the settlement agreement, although in April 2015 he did send a check representing 10 percent of his commission on one sale only. A supplemental declaration acknowledged receipt of other commission payments totaling $46,000.00. In the bankruptcy action, Brother had neither prepared nor presented a stipulation that his settlement obligation was not dischargeable.

**D. THE MOTION TO ENFORCE THE SETTLEMENT**

On June 30, 2015, Sister filed a motion to compel enforcement of the settlement under Code of Civil Procedure section 664.6. On July 20, 2015, Brother filed opposition

6

stating that he did "not contest that the Memorandum for Settlement is a valid and binding agreement . . . ," but Sister's motion to enforce it was premature because (a) the bankruptcy court had not yet approved the settlement; (b) Sister had not yet executed a general release; (c) any judgment was subject to the bankruptcy stay.  Brother's counsel declared on July 20, 2015 that the bankruptcy court had declined to enter a judgment requested by Sister at a hearing on June 2, 2015.  Also, counsel had forwarded three checks totaling $61,511.43 representing part of Brother's real estate commissions.  In response, Sister provided a transcript of the June 2 bankruptcy court hearing.[5]

Brother's oral arguments at the hearing on July 31, 2015 were consistent with his written opposition.  Significantly, he did not assert that the settlement memorandum included an illegal penalty provision.  The court granted the motion to enforce the settlement pending Sister signing a general release.  On July 31, 2015, the court entered a judgment against Brother for $850,000.00.

### III.  THE LIQUIDATED DAMAGES STATUTE

In *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 976-977 (*Ridgley*), the California Supreme Court explained:  "California law has . . . long recognized that a provision for liquidation of damages for contractual breach  . . .  can under some circumstances be designed as, and operate as, a contractual forfeiture.  To prevent such operation, our laws place limits on liquidated damages clauses.  Under the 1872 Civil Code, a provision by which damages for a breach of contract were determined in anticipation of breach was enforceable only if determining actual damages was impracticable or extremely difficult.  (1872 Civ. Code, §§ 1670, 1671.)  As amended in 1977, the Code continues to apply that strict standard to liquidated damages clauses in certain contracts (consumer goods and services, and leases of residential real property (§ 1671, subds. (c), (d)), but somewhat liberalizes the rule as to other contracts:  '[A]

---

[5]  What occurred at the bankruptcy hearing was important to the arguments in the trial court but is irrelevant to the issues on appeal.

provision in a contract liquidating the damages for breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.' (§ 1671, subd. (b) . . . .)  [Fn. omitted]"[6]

*Hong v. Somerset Associates* (1984) 161 Cal.App.3d 111, 114, explained that "[i]n response to a recommendation of the California Law Revision Commission (Recommendation Relating to Liquidated Damages, 13 Cal. Law Revision Com. Rep. (1976) p. 1739), the Legislature in 1977 enacted section 1671 et seq., which became effective July 1, 1978.  (Stats. 1977, ch. 198.)"  The Law Revision Commission has provided a detailed explanation of the relevant changes in section 1671.  Their "comments are entitled to great weight in construing statutes proposed by the

---

[6]  In full, section 1671 states:  "(a) This section does not apply in any case where another statute expressly applicable to the contract prescribes the rules or standard for determining the validity of a provision in the contract liquidating the damages for the breach of the contract.

"(b) Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.

"(c) The validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either:

"(1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; or

"(2) A party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support.

"(d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Commission and adopted without substantial change." (*Pacific Trust Co. TTEE v. Fidelity Fed. Sav. & Loan Assn.* (1986) 184 Cal.App.3d 817, 823.)

What is most relevant in their explanation is that the statute was "amended to provide in subdivision (b) a new general rule favoring the enforcement of liquidated damages provisions except against a consumer in a consumer case. In a consumer case, the prior law under former Sections 1670 and 1671, continued in subdivision (d), still applies. . . . *In the cases where subdivision (b) applies, the burden of proof on the issue of reasonableness is on the party seeking to invalidate the liquidated damages provision.* The subdivision limits the circumstances that may be taken into account in the determination of reasonableness to those in existence 'at the time the contract was made.' The validity of the liquidated damages provision depends upon its reasonableness at the time the contract was made and not as it appears in retrospect. Accordingly, the amount of damages actually suffered has no bearing on the validity of the liquidated damages provision. . . . Unlike subdivision (d), subdivision (b) gives the parties considerable leeway in determining the damages for breach. All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract." Among "[o]ther relevant considerations" are "the anticipation of the parties that proof of actual damages would be costly or inconvenient" and "the difficulty of proving causation and foreseeability . . . ." (Our italics; 13 Cal. Law. Revision Com. Rep., *supra*, at pp. 1750-1752.)

Though the pre-1978 versions of sections 1670 and 1671 did not specifically assign a burden of proof, by 1953 it was "settled law that the burden is on the party seeking to rely upon a liquidated damage provision in a contract to plead and prove facts showing impracticability." (*Better Food Markets v. American Dist. Tel. Co.* (1953) 40 Cal.2d 179, 185 (*Better Food Markets*); cf. *Rice v. Schmid* (1941) 18 Cal.2d 382, 385 (*Rice*); *Robert Marsh & Co. v. Tremper* (1930) 210 Cal. 572, 575.) The 1977 amendment shifted the evidentiary burden, with section 1671, subdivision (b) now stating, "a provision in a contract liquidating the damages for the breach of the contract is valid

9

*unless the party seeking to invalidate the provision establishes* that the provision was unreasonable under the circumstances existing at the time the contract was made." (Our italics; cf. *O'Connor v. Televideo System, Inc.* (1990) 218 Cal.App.3d 709, 718.)[7]

A violation of section 1671, subdivision (b), as amended, can be established by evidence that a contractual damages provision was intended by the parties to impose a penalty. (*Ridgley*, *supra*, 17 Cal.4th at p. 979.) Even without proof of that intent, a contractual provision may be invalid under section 1671, subdivision (b) if the parties' estimate of damages resulting from a contract breach is outside the range of reasonableness, either too high or too low, in light of the circumstances known at the time of the estimate. "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley*, at p. 977.) Such contractual provisions must be distinguished from provisions intended to create an option of alternative performance. (*McGuire v. More-Gas Investments, LLC* (2013) 220 Cal.App.4th 512, 522-523 (*McGuire*).)

As the Law Revision Commission stated, demonstrating the provision is unreasonable requires consideration of existing circumstances relevant to the formation of the contract. (Cf. *Christian*, *supra*, 52 Cal.App.4th at p. 654; *El Centro Mall, LLC*, *supra*, 174 Cal.App.4th at p. 63.) A recital in the agreement that a provision is either for "penalty" or "liquidated damages" is not conclusive, as the parties' intent should be

---

[7] Some courts have gone so far as to say that the legislative policy about liquidated damages clauses has changed to presumptive validity from presumptive invalidity. (E.g., *Guthman v. Moss* (1984) 150 Cal.App.3d 501, 510; *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654 (*Christian*); *El Centro Mall, LLC v. Payless ShoeSource, Inc.* (2009) 174 Cal.App.4th 58, 62 (*El Centro Mall, LLC*).) That is an overstatement. Liquidated damages provisions were not presumptively invalid in all cases. *Caplan v. Schroeder* (1961) 56 Cal.2d 515, 519-520 (*Caplan*), stated that *Freedman v. The Rector* (1951) 37 Cal.2d 16 "pointed out that a provision for the retention of a reasonable down payment as liquidated damages in a contract for the sale of real property is presumptively valid."

derived from the entire agreement and its surrounding circumstances. (*Pogue v. Kaweah Power & Water Co.* (1903) 138 Cal. 664, 667-668; cf. *Nakagawa v. Okamoto* (1913) 164 Cal. 718, 723; *Dyer Bros. Golden West Iron Works v. Central Iron Works* (1920) 182 Cal. 588, 592 (*Central Iron Works*).)

## IV. STANDARD OF REVIEW

In determining the reasonableness of a provision for liquidated damages, "the court should place itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably foreseeable." (*Better Food Markets*, *supra*, 40 Cal.2d at p. 185.) The California Supreme Court has recognized that it is essentially a factual question whether the parties reasonably estimated foreseeable damages under the prevailing circumstances (*Central Iron Works*, *supra*, 182 Cal. at p. 593; *Rice*, *supra*, 18 Cal.2d at p. 385; *Petrovich v. City of Arcadia* (1950) 36 Cal.2d 78, 86) that becomes a question of law when the facts are undisputed and susceptible of only one reasonable interpretation. (*Better Food Markets*, at pp. 184-186.)

Brother cites two cases for the proposition, "Whether a liquidated damage provision is valid, or instead constitutes an unenforceable penalty, presents a question of law that this Court reviews de novo." One is *Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969, which stated, "Because we are presented with a question of law on undisputed facts, our review is de novo." (*Id.* at p. 974.) The other is *Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794 (*Kim*), upon which *Purcell* relied, which stated at page 794, "Whether an amount to be paid upon breach is to be treated as liquidated damages or as an unenforceable penalty is a question of law. (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1393 [*Beasley*].)" *Kim* also stated at page 795, "The validity of the deferred rent provision was a question for the judge to decide. (*Beasley v Wells Fargo Bank, supra,* 235 Cal.App.3d at p. 1393.)"

We believe *Kim* miscontrues *Beasley*. One of the issues in *Beasley* was whether a judge or jury should decide the validity of a liquidated damages provision. (*Beasley*, *supra*, 235 Cal.App.3d at p. 1393.) That question under California constitutional law

11

referred back to what the common law provided in 1850. (*Id.* at p. 1391.) It was in that context that *Beasley* quoted an English decision from 1849 stating, " 'it is now clearly settled, that, whether the sum mentioned in an agreement to be paid for a breach, is to be treated as a penalty or as liquidated and ascertained damages, is a question of law, to be decided by the judge upon a consideration of the whole instrument.' " (*Id.* at p. 1393.) It was this passage that *Kim* cited for the proposition that the validity of a damages provision is a question of law.[8]

    *Kim* did not discuss the following analysis in *Beasley*. "If validity was a matter for the judge to decide, can we decide that matter independently on appeal? . . . [T]he answer is no, but the question is more problematic." (*Beasley*, *supra*, 235 Cal.App.3d at p. 1394.) "The problem here is that the validity issue is not really a classic question of law, but is one of fact that, because of its character, is nevertheless committed to judicial determination." (*Ibid.*) "Validity being a factual issue, it would be particularly inappropriate for us to decide that issue independently if it turns on witness credibility. Appellate courts should defer to trial judge decisions 'whenever the trial judge's "nether position" in the judicial pyramid makes him a presumptively more capable decisionmaker [citation] because of "his observation of the witnesses [and] his superior opportunity to get 'the feel of the case.' " [Citation.]' [Citation.]" (*Ibid.*) *Beasley* thus encouraged appellate deference to the fact-finding involved in determining the validity of a damages agreement, not de novo review.

    Another court has attempted to reconcile the conflicting statements in *Beasley* and *Kim* by stating, "Based on the foregoing precedent, we conclude the ultimate question of a provision's invalidity as a penalty is a question of law subject to de novo review, but the factual foundation for appellate review consists of (1) the facts that are not in dispute

---

    [8] Unfortunately, *Kim*'s misconception has been perpetuated. *Kim* was quoted with approval in *Greentree*, *supra*, 163 Cal.App.4th at page 499, and *Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 646. In turn, *McGuire*, *supra*, 220 Cal.App.4th at page 523, quoted *Greentree* with approval.

12

and (2) the facts that are established by viewing the conflicting evidence in the light most favorable to the trial court's judgment." (*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1355.)

The court in *El Centro Mall, LLC*, *supra*, 174 Cal.App.4th at page 62, without citing *Beasley*, read *Kim* more narrowly: "Where the facts are undisputed, we review the question of whether a liquidated damages clause is enforceable de novo. [Citing *Kim*.] Where, as here, there is a conflict in the evidence, we review the trial court's ruling for substantial evidence supporting it. Simply put, our reviewing power in such instances ' " ' begins and ends with a determination as to whether there is *any* substantial evidence to support [the factual findings]; [we have] no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or *in the reasonable inferences that may be drawn therefrom.*' [Citation.]" [Citation.]' [Citation], original italics.)"

We agree that *Kim* should be read narrowly. It is appropriate for an appellate court to independently review the validity of a contractual provision under section 1671, subdivision (b) only when the facts are undisputed and lead to one reasonable conclusion.

## V. FORFEITURE

Sister contends that Brother is barred from asserting for the first time on appeal that the settlement agreement includes an unlawful penalty provision. Brother replies: "The facts are undisputed, and no additional fact-finding is needed. [fn. omitted] This Court reviews the issue de novo, without deferring to the trial court's ruling. It is a well-established rule of appellate practice that legal issues based on undisputed facts are not forfeited and can be raised for the first time on appeal." Brother accurately describes the law when the facts are undisputed and no further fact-finding is required, but he does not accurately describe this case.

"It is the general rule that a party to an action may not, for the first time on appeal, change the theory of the cause of action. [Citations.] There are exceptions but the general rule is especially true when the theory newly presented involves controverted questions of fact or mixed questions of law and fact. If a question of law only is

13

presented on the facts appearing in the record the change in theory may be permitted. [Citation.] But if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial the opposing party should not be required to defend against it on appeal." (See *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 340-341 (*Panopulos*).)

This general rule was applied to a liquidated damages contention in *Caplan*, *supra*, 56 Cal.2d 515, where buyers of realty had made a $15,000 down payment on property selling for $323,000. The contract of sale provided that the down payment would be returned if the sellers did something to prevent the sale, but would be retained if the buyers' default prevented the sale. (*Id.* at p. 518.) Although the buyers willfully breached the contract, the trial court nevertheless awarded them restitution of most of their payments. (*Ibid.*) The California Supreme Court rejected for lack of evidence the sellers' argument that they were entitled to retain the down payment because they had given separate consideration for it. (*Id.* at pp. 518-519.)

The buyers also argued on appeal that the contractual provision was an invalid penalty under former sections 1670 and 1671. While observing "that a provision for the retention of a reasonable down payment as liquidated damages in a contract for the sale of real property is presumptively valid" (*Caplan*, *supra*, 56 Cal.2d at pp. 519-520), the court also noted that the sellers "did not seek to sustain the provision for the retention of the note in the trial court on the theory that it was a provision for liquidated damages, and they have not advanced that theory on appeal. Moreover, the evidence does not establish as a matter of law that the provision was one for liquidated damages." (*Id.* at p. 520.) "It . . . appears that whether the parties intended the provision for the retention of the note to be one for liquidated damages to the exclusion of the damages that would otherwise be recoverable and, if so, whether the requirements of Civil Code section 1671 were met, were questions of fact that it was incumbent on [sellers] to present to the trial court for resolution. Since they did not do so, the judgment cannot be reversed on the theory that the payment of the note constituted liquidated damages. (See *Panopulos v. Maderis*, 47 Cal.2d 337, 340-341; [citations].)" (*Caplan*, at pp. 520-521.)

When *Caplan* was decided, the burden was on the sellers who sought to retain the down payment to plead and prove they made a valid agreement for liquidated damages. Because the sellers did not present that argument or supporting facts to the trial court, they were barred from raising it on appeal.

Under the current statute, it was Brother's burden to allege and prove in the trial court that the stipulated judgment provision in the settlement memo "was unreasonable under the circumstances existing at the time the contract was made." (§ 1671, subd. (b).) Far from challenging the reasonableness of stipulated judgment provision, Brother's opposition to enforcement admitted that the settlement memo was "valid and binding." Brother's counsel offered the trial court two drafts of settlement agreements explaining that the stipulated judgment was not intended as a penalty, but as motivation for Brother to make timely payments and that Sister had agreed to accept substantially less than her anticipated recovery due to kindness and family feelings. With no challenge to the validity of the stipulated judgment provision, no declaration was offered by Brother or Sister regarding the negotiations preceding the settlement memo.

On appeal, Brother has changed his position by now attacking the stipulated judgment provision and objecting to our consideration of the settlement agreements offered by his counsel.[9] Because Brother's "new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial[,] the opposing party should not be required to defend against it on appeal."

---

[9] Sister's brief has repeatedly emphasized some recitals in the draft settlement agreements. Brother objects on appeal under Evidence Code section 1119, subdivision (b) that writings prepared pursuant to mediation are neither admissible nor discoverable in any civil action. This objection is subject to waiver under certain circumstances. (Evid. Code, § 1122.) In any event, a party cannot complain on appeal that the trial court admitted evidence offered by that party. (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1555; *Excelsior Union High School Dist. v. Lautrup* (1969) 269 Cal.App.2d 434, 441; see *Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.)

15

(*Panopulos*, *supra*, 47 Cal.2d at p. 341.) Brother is precluded from arguing on appeal that the settlement memo includes an invalid penalty provision. In light of this conclusion, we need not consider Sister's alternate contention that Brother is subject to forfeiture due to his fraud under section 3275.[10]

## VI. DISPOSITION

The order enforcing the settlement is affirmed. Sister is entitled to costs on appeal.

---

[10] Section 3275 has stated since 1872, "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

_____
WALSH, J. [*]

WE CONCUR:


_____
RUSHING, P.J.




_____
PREMO, J.




H042740 Krechuniak v. Noorzoy

_____

[*]Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Superior Court No.: M100205 |
| Trial Judge: | The Honorable Thomas W. Wills |
| Attorneys for Cross-Complainant and<br>Respondent,<br>Aisha A. Krechuniak: | Bruce C. Funk<br>LAW OFFICE OF BRUCE FUNK<br><br>Laura S. Liccardo |
| Attorneys for Cross-Defendant and<br>Appellant,<br>Zia Jamal Noorzoy: | STRONG APPELLATE LAW<br>Jeanine G. Strong<br><br>DOUGHERTY & GUENTHER, APC<br>Ralph P. Guenther |

H042740 Krechuniak v. Noorzoy