Filed 9/17/18

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DLI PROPERTIES LLC, | ) | No. BV 032016 |
| Plaintiff and Respondent, | ) | Lancaster Trial Court |
| v. | ) | No. 16UA0882 |
| CHEROKEE HILL, | ) | |
| Defendant and Appellant. | ) | **OPINION** |

Appeal from an order of the Superior Court of Los Angeles County, Lancaster, Trial Judge Paul A. Bacigalupo. Affirmed.

BASTA, Inc., Daniel J. Bramzon, Kevin Hermansen, Ross T. Kutach and Eric M. Post, for Defendant and Appellant.

Nussbaum, Brandon S. Dimond and Lane M. Nussbaum, for Plaintiff and Respondent.

\*          \*          \*

1

INTRODUCTION

Plaintiff DLI Properties, LLC filed an unlawful detainer action against defendant Cherokee Hill after she failed to pay rent and defaulted on the parties' lease agreement. Defendant raised as an affirmative defense plaintiff's failure to comply with Civil Code section 1962's[1] disclosure requirements. On appeal, defendant contends section 1962, subdivision (c), bars a "successor owner" from instituting eviction proceedings based on nonpayment of rent during the period of statutory noncompliance and, in her case, plaintiff did not make the required disclosures in the rental agreement. We determine that plaintiff was not a successor owner for purposes of subdivision (c) and affirm.

BACKGROUND[2]

Defendant moved into the subject property in 2011, when she entered into a rental agreement with the owners, Prince E. Cullum, Sr. and Bernice Leola Cullum. The Cullums lost the home to foreclosure, and the property was sold to plaintiff on September 8, 2015.

Plaintiff hired Strategic Property Management, Inc. (Strategic) to manage the property. On the date of the sale, Strategic and defendant executed a new rental agreement for the premises. In the written month-to-month rental agreement, "Strategic Property Management Inc." was listed as "Landlord." Defendant was directed to pay rent to "DLI Properties LLC" at "P.O. Box 1029 Agoura Hills, Ca 91376" (¶ 3). Regarding service of notices, defendant was directed to send notices to "Landlord: Strategic Property Management Inc [¶] P.O. Box 1029 [¶] Agoura Hills, Ca 91376" (¶ 36).

At the trial, Olinka Morales testified she was employed by Strategic to manage the property. She identified the rental lease agreement between Strategic and defendant noted above. During cross-examination, Morales stated that Fabiola Mendoza and Beverly Jacobo were also authorized to manage the property. She testified the business address for Strategic was not the post office box address listed in the rental agreement, but rather a street address.

---

[1]All further statutory references are to the Civil Code unless otherwise indicated.

[2]The facts pertaining to defendant's default under the lease and failure to comply with the three-day notice are omitted as irrelevant to the issues on appeal.

Outside the presence of the jury, defendant moved for nonsuit, claiming the action was barred under section 1962, subdivision (c).  Defendant argued section 1962 required the rental agreement to disclose certain information for effecting personal service, and the evidence presented in plaintiff's case-in-chief established lack of compliance.  Plaintiff countered that section 1962 did not apply to the circumstances of this case.  The court denied the motion.

Defendant testified Strategic became the "new landlord" in September 2015, and she had contacts and communications with it concerning habitability issues pertaining to the property.  After the parties rested, defendant moved for a directed verdict based on plaintiff's failure to comply with section 1962.  As before, plaintiff maintained the statute did not apply because it only implicated "successor owners" and, in this instance, the parties had executed a new lease.  The court denied defendant's motion.

The jury returned a verdict in favor of plaintiff, finding plaintiff served a valid three-day notice and did not breach the warranty of habitability.  Thereafter, defendant moved for judgment notwithstanding the verdict (JNOV), once again arguing plaintiff had not complied with section 1962.  The trial court denied the motion, stating, "The court finds that the owner, plaintiff, through its management agent complied with the Code under 1962 for purposes of notice."

DISCUSSION

Defendant contends the court should have granted a nonsuit or issued a directed verdict in her favor, and the court erred in denying her JNOV motion.  (Code Civ. Proc., §§ 581c, 630, 629.)[3]

*Motions for Nonsuit, Directed Verdict, and Judgment Notwithstanding the Verdict*

"While made at different times, the three motions are analytically the same and governed by the same rules.  [Citation.]  The function of these motions is to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict.  [Citation.]  Put another way, the purpose of

_____

[3]Denial of a motion for nonsuit or directed verdict may be reviewed on appeal from the judgment.  (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263.)

3

motions for nonsuit, directed verdicts and jnovs is to allow a party to prevail as a matter of law where the relevant evidence is already in." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Dept. of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750, italics omitted.)

A trial court may grant these motions "only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support it. [Citation.]" (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 946; *Adams v. City of Fremont*, *supra*, 68 Cal.App.4th at p. 262.) In reviewing the denial of these motions, the appellate court, like the trial court, must evaluate the evidence in the light most favorable to the plaintiff. (*Id.* at p. 263.) Where, as here, the motions "raise[] legal issues, such as the application of law to undisputed facts or the interpretation of a statute, we review the trial court's ruling 'under a de novo standard of review.' [Citations.]" (*Gonzales v. City of Atwater*, *supra*, 6 Cal.App.5th at pp. 946-947.)

*Statutory Interpretation*

We are tasked to determine whether the rental agreement at issue conformed to the requirements of section 1962, subdivision (a), and whether subdivision (c)'s prohibition applied to plaintiff. This appeal then involves resolving questions of law based on undisputed facts, and we review the trial court's ruling de novo. (*Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 723.)

In construing section 1962, we must "'"""""ascertain the intent of the lawmakers so as to effectuate the purpose of the statute."""""" (*De Vries v. Regents of the University of California* (2016) 6 Cal.App.5th 574, 593.) We begin, as always, with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy. [Citations.]" (*Wells v. One2One Learning Foundation*

4

(2006) 39 Cal.4th 1164, 1190.)

*Civil Code Section 1962, Subdivisions (a) and (b)*

Subdivision (a) provides, in pertinent part, "Any owner of a dwelling structure specified in Section 1961 or a party signing a rental agreement or lease on behalf of the owner shall do all of the following: [¶] (1) Disclose therein the name, telephone number, and usual street address at which personal service may be effected of each person who is: [¶] (A) Authorized to manage the premises. [¶] (B) An owner of the premises or a person who is authorized to act for and on behalf of the owner for the purpose of service of process and for the purpose of receiving and receipting for all notices and demands. [¶] (2) Disclose therein the name, telephone number, and address of the person or entity to whom rent payments shall be made."

Subdivision (c) provides, "The information required by this section shall be kept current and this section shall extend to and be enforceable against any successor owner or manager, who shall comply with this section within 15 days of succeeding the previous owner or manager. A successor owner or manager shall not serve a notice pursuant to paragraph (2) of Section 1161 of the Code of Civil Procedure or otherwise evict a tenant for nonpayment of rent that accrued during the period of noncompliance by a successor owner or manager with this subdivision. Nothing in this subdivision shall relieve the tenant of any liability for unpaid rent."

*Plain language*

It is clear from the plain terms of the statute that the requirement to disclose pertinent information applies to two distinct entities—"owners" and "successor owners." Subdivision (a) expressly states it applies to "[a]ny owner . . . or a party signing a rental agreement or lease on behalf of the owner" and requires the disclosure of specified information. Subdivision (c) states the disclosure requirements "shall extend to and be enforceable against any successor owner or manager." Subdivision (c) further provides that if a *successor* owner or manager fails to provide the specified information, the prohibition against eviction applies. There is no similar penalty for an *owner* or its agent who fails to comply with disclosure requirements under either subdivision (a) or (c).

5

The undisputed evidence presented at trial established plaintiff's noncompliance with disclosure requirements. Defendant points out the rental agreement identified "SPM" as the "Landlord" but did not identify or designate an owner or an agent who was authorized to act on the owner's behalf for service of process. The lease also did not disclose the "usual street address" of such persons or entities, a valid telephone number, or the contact information for any of the persons authorized to manage the premises.

Based on these omissions, defendant contends the trial court erred in finding plaintiff complied with the requirements. We agree the evidence established a lack of strict compliance. Nevertheless, as we explain below, based on our conclusion that subdivision (c) did not apply to plaintiff, we affirm the judgment and the court's denials of defendant's motions. (*Leyla v. Crockett & Co., Inc.* (2017) 7 Cal.App.5th 1105, 1108 ["'We are not bound by the issues actually decided by the trial court. "The appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case"'"].)

*Ambiguity*

Defendant contends that, under the statute, "if a new owner *assumes* a previously signed lease agreement . . . that successor-owner must still provide . . . disclosures." She does not respond, however, to plaintiff's argument that a new owner who does not assume the existing lease, but instead executes a separate *new* lease with the tenant, is an *owner* and not a *successor* owner for purposes of subdivision (c)'s bar against evictions.

The question then becomes whether plaintiff qualifies as a successor owner to which subdivision (c) applies. Because section 1962 does not define "owner" or "successor owner," and it is silent as to whether a new owner who executes a separate new lease with the tenant is an "owner," there is a legitimate ambiguity in the statute.

After a property is sold or transferred, the transferee takes subject to the existing lease; this new owner steps into the landlord's shoes and becomes the successor landlord, assuming the terms and conditions of the lease the tenant had with the prior owner. (See *Kirk Corp. v. First American Title Co.* (1990) 220 Cal.App.3d 785, 809.) The same is true when the property is sold through foreclosure, as was the case here. (See *Nativi v. Deutsche Bank National*

6

*Trust Co.* (2014) 223 Cal.App.4th 261, 275.)

Plaintiff argues the term "successor owner" "clearly refers to an owner who acquired a property . . . during the tenancy" and succeeded to ownership and assumed the existing lease. Black's Law Dictionary defines "Successor" as: "One that succeeds or follows; one who takes the place that another has left, and sustains the like part or character; . . ." (Black's Law Dict. (6th ed. 1990) p. 1431, col. 2, emphasis added.) Notably, the Legislature chose to use the phrase "successor owner or manager" rather than "successor in interest," which has a more restrictive definition—"One who follows another in ownership . . . of property." (*Ibid.*) This seems to suggest that the applicability of subdivision (c) is not dependent on whether a person or entity succeeds in "ownership" of the subject property, and it supports our conclusion that the term "successor owner" or "successor . . . manager" is referring to the rights and duties, not in the property, but rather with respect to the existing lease. (See *River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922, 954 ["every word and phrase has significance and was chosen for a purpose"].)

In this case, after plaintiff purchased the subject property, it did not assume the existing lease and its terms and conditions. Rather, it's management company, Strategic, executed a new and separate lease with defendant. Defendant's tenancy and the rights and obligations of the parties were, therefore, controlled by this new lease. As a consequence, plaintiff was not *succeeding* to the rights and obligations of the prior owners (the Cullums) under the prior rental agreement.

For purposes of this appeal, we agree with plaintiff that there is an important distinction to be made between an owner whose identity may not be known following a sale of the property and an owner (or owner's manager) whose identity is made known because a new lease is executed. When an owner, successor owner, manager, or agent fails to comply with section 1962's requirements to disclose and keep current specified information, the tenant, under section 1962.7, is excused from effecting personal service on them, and he is permitted to effect service of process by mail. There is no other penalty imposed on the owner for its failure to comply. However, when a *successor owner or manager* fails to provide the

7

specified information, it also is prohibited from evicting the tenant based on unpaid rent accruing during the period of noncompliance.

This disparate treatment of owner and successor owner/manager for the same dereliction of their statutory duty indicates the prohibition is meant to specifically target successor owners and their managers to address a danger posed by the change in ownership. There is a greater likelihood a tenant would not be aware of relevant information concerning a successor owner/manager rather than an owner with which he enters into a lease agreement. Therefore, the prohibition against evictions encourages and incentivizes a successor owner/manager to disclose such information.

Our interpretation is informed and bolstered by the legislative history and analysis of Assembly Bill No. 1953, which added subdivision (c) to section 1962 in 2012.

The key issue before the Assembly Committee on Judiciary was whether tenants should "be protected from eviction by a successor owner of the rental property for nonpayment of rent that could have otherwise been paid and received if that owner had complied with existing law requiring prompt notice of where to pay rent." (Assem. Com. on Judiciary, analysis on Assem. Bill No. 1953 (2011-2012 Reg. Sess.) May 1, 2012 [proposed amendment] p. 1.)

The bill's author explained the need for additional law: "Purchasers or rental properties, especially foreclosed homes, are increasingly allowing months to go by without notifying tenants where to pay rent. When a new owner fails to timely inform the tenant to whom rent should be paid, but then months later serve [*sic*] a three-day notice demanding all of the accumulated rent, many low-income tenants no longer have the money to pay and keep their homes. Good tenants end up losing their housing because their landlord failed to comply with the law, unnecessarily creating nonpayment situations. This bill will help prevent unnecessary evictions after ownership changes." (Assem. Com. on Judiciary, analysis of Assem. Bill No. 1953 (2011-2012 Reg. Sess.) May 1, 2012 [proposed amendment], p. 4.)

Tenants Together, a sponsor of the bill, noted that "some tenants have received three day pay-or-quit notices from their landlord for failure to pay rent when such failure occurred only because the tenant had not been properly notified by the new owner of the property where to

8

send the rent payment. With accounts of rental scams increasingly in the news . . . , supporters contend that it is reasonable for tenants to refrain from sending rent to the person they know to be the former owner, or other unknown persons, unless they have received proper notice from the new owner were to send rent, as required by law. As acknowledged by the California Apartment Association, 'It is logical to assume that if a new owner doesn't provide notice to a tenant about change in ownership, the new owner cannot expect to receive the rent timely.'" (Assem. Analyses, 3d reading analysis of Assem. Bill No. 1953 (2011-2012 Reg. Sess.) as amended May 9, 2012, p. 3.)

The bill's author also noted the abuse "[i]n rent control jurisdictions," where "new owners in some cases delay notifying tenants where to send rent, allow rent to build up, and then after many months evict for nonpayment in order to vacate homes of low-rent tenants. In addition, the failure of new owners to timely notify tenants where to pay rent can lead to particular problems for tenants who receive benefits such as SSI, as these tenants risk losing their benefits if they accumulate too much money in their bank accounts." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1953 (2011-2012 Reg. Sess.) as amended May 9, 2012, p. 3.)

Thus, the legislative history makes clear the primary purpose for adding subdivision (c) to section 1962 was to ensure successor owners and/or their managers would notify their tenants *where they were to send rent payments* so as to avoid evictions based on nonpayment of rent. The instant case did not involve any of the scenarios for which the legislature had expressed concern and which prompted the addition of subdivision (c). In fact, any concern about successor owner abuse along those lines was effectively addressed by the execution of a new lease between plaintiff's manager and defendant on the day plaintiff became the owner of the property.

Where, as here, an owner or its manager enters into a new lease with an existing tenant, the owner or its manager is not a "successor" owner or manager for purposes of section 1962, subdivision (c), and subdivision (c) does not apply to bar an unlawful detainer action. As such, any deficiencies in the information disclosed in the new lease are addressed by operation of

9

section 1962.7.  Our conclusion is supported by a common sense interpretation of section 1962 and the legislative history relating to the addition of subdivision (c).[4]

## DISPOSITION

The judgment is affirmed.  Plaintiff to recover costs on appeal.

_____
Richardson, J.

We concur:

_____            _____
P. McKay, P. J.                                 Ricciardulli, J.

---

[4]Contrary to defendant's argument, our interpretation does not render subdivision (c) a nullity because it still applies to new owners who assume an existing lease with the tenant.