Filed 4/28/23  Estate of Trunnell CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| Estate of MALCOLM TRUNNELL, Deceased | |
| CATHLEEN ZAPPONE, as Administrator, etc.<br><br>    Petitioner and Appellant,<br><br>v.<br><br>TAWNYA L. TRUNNELL,<br><br>    Objector and Appellant. | A163313<br><br>(Alameda County Super. Ct. No. RG17879783) |

Tawnya Trunnell sued Cathleen Zappone as administrator of the estate of Malcom Trunnell, alleging the estate failed to pay spousal support as required by a stipulated judgment dissolving Tawyna and Malcom's marriage.[1]  The trial court entered judgment for Tawnya, awarding about $63,000 in damages for unpaid support payments and special damages Tawnya suffered after the missed payments, as well as prejudgment interest.

---

[1] Because Tawnya and Malcom Trunnell share the same last name, we refer to them by their first names to avoid confusion.  Except where otherwise stated, references to Zappone in this opinion refer to her in her capacity as administrator of Malcolm's estate.

1

Tawnya and Zappone both appeal. Zappone argues the trial court erred in finding Malcom's estate breached the stipulated judgment and should not have awarded any damages. Tawnya argues the trial court should have enforced a liquidated damages provision in the stipulated judgment, which states that if Malcolm failed to pay the spousal support, Tawnya would have the right to claim the true value of her community interest in certain property that she had compromised in the stipulated judgment.

We agree with the trial court that Malcolm's estate failed to comply with the stipulated judgment and that the liquidated damages provision is unenforceable, but we conclude the trial court erred in awarding special damages and in its calculation of prejudgment interest. We will therefore reverse the judgment and remand for further proceedings.

## BACKGROUND

In September 2013, a family court judgment dissolved Tawnya and Malcom's thirteen-year marriage. The judgment was based on a document titled "Stipulated Judgment for Dissolution of Marriage," which contained the details concerning support and division of property and which is, in effect, a marital settlement agreement. Tawnya and Malcom prepared the document with the help of a paralegal, not a lawyer, and signed it. The document was attached to the judgment, and the judgment states that each attachment to the judgment "is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions." The judgment also

2

states that the "settlement agreement"—i.e., the stipulated judgment—is "attached and made a part of this judgment." Many of the provisions in the stipulated judgment are typed into the judgment itself.

The stipulated judgment awarded Malcolm a house in Livermore and a flooring business. Tawnya received a payment of $40,000 for her community interest in these assets, plus the right to half of the proceeds of the sale of a timeshare above a certain amount. Malcolm was required to pay Tawnya $1,200 per month in spousal support from June 2013 through November 2018. The stipulated judgment and judgment both state, "If [Malcolm] dies before the spousal support obligation has been paid, the balance of spousal support due will be paid from [Malcolm]'s estate." Both documents also specify, "If [Malcolm] fails to pay the spousal support as agreed, [Tawnya] shall have the right to claim the true assessed value of her community interest in the real property and business." The signed stipulation also contains an attorney's fees provision.

Until his death on May 16, 2017, Malcolm timely made all spousal support payments via automatic payments from his bank account. Malcolm died intestate. Three days after Malcolm's death, Zappone, who was Malcolm's wife when he died, stopped all automatic payments from his accounts, including Tawnya's support payment. She did this believing she was acting on behalf of Malcolm's estate, to preserve funds in order to pay the employees of the flooring business.

3

On May 31, 2017, Zappone petitioned a probate court to be appointed administrator of Malcolm's estate. The probate court granted her petition and, on July 14, 2017, issued letters of administration.

Zappone paid certain estate expenses, such as mortgages on the house, but did not pay the spousal support. Tawnya submitted a creditor claim to Zappone in August 2017 for about $1.15 million, which consisted of $21,600 for unpaid spousal support and about $1.13 million for half the value of the house and business. Zappone allowed the claim for $21,600 and rejected the balance.

In October 2017, Tawnya filed a complaint in civil court against Zappone for breach of the stipulated judgment and seeking a declaration of her interest in the house and business. Zappone offered to pay Tawnya a lump sum of $21,600 for the balance of spousal support remaining at Malcolm's death, but Tawnya declined the offer, insisting on receiving the full amount of the claim she had submitted.

After a bifurcated bench trial on liability, the trial court found Malcolm's estate breached its obligations under the stipulated judgment. The court concluded that the estate could have satisfied the judgment by either paying Tawnya monthly or in a lump sum, but neither occurred. But the court found Tawnya was not entitled to the value of her community interests in the house and the business. It interpreted the stipulated judgment as entitling Tawnya to such relief only if Malcolm himself failed to pay the support as agreed, not his estate, and in

4

this case it was Malcolm's estate that failed to make the required payments.

After a second phase of trial on damages, the trial court awarded Tawnya about $63,000 in damages. This consisted of $22,800 in spousal support (after correcting the parties' count of the number of missed payments), special damages of $28,000, and prejudgment interest running from the date of Malcolm's death. The trial court awarded the special damages based on Tawnya's testimony that after the spousal support payments stopped, she fell into substantial debt and incurred late payment fees and interest charges for expenses she would have been able to pay with the spousal support. The trial court again rejected Tawnya's request for the value of her community property interest in the house and business, but this time with a different rationale. It characterized that aspect of the stipulated judgment as a liquidated damages clause and found it unreasonable and therefore unenforceable.

After further proceedings, the trial court awarded Tawnya about $100,000 in attorney's fees and costs based on the attorney's fees provision in the stipulated judgment.[2]

---

[2] We asked the parties to address whether the trial court properly had jurisdiction over this action, given that Tawnya is attempting to enforce the stipulated judgment from the family court. (See *Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 25–26 [breach of contract and declaratory judgment action to enforce family court judgment should not have been filed in civil trial court].) Even assuming Tawnya should have proceeded in family court (which we need not decide), Zappone forfeited the issue by not objecting below. (*Williams v. Superior Court* (1939) 14 Cal.2d 656, 662 [conflict of priority between departments of a single

5

## DISCUSSION

### I. Administration of probate estates

To evaluate many of the parties' arguments, it is first necessary to understand the general process for the resolution of claims against estates. With an exception not relevant here, "after the death of the decedent all money judgments against the decedent . . . are payable in the course of administration and are not enforceable against property in the estate of the decedent under the Enforcement of Judgments Law." (Prob. Code, § 9300, subd. (a).)[3] However, such judgments must be filed "in the same manner as other claims" against the estate.[4] (§ 9300, subd. (b); *Embree v. Embree* (2004) 125 Cal.App.4th 487, 493–494.) This

---

superior court is equivalent to the conflict between superior courts of different counties]; *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 769–774 [priority of one superior court over another is a rule of policy and not jurisdictional in the sense that a failure to follow it renders subsequent proceedings void]; *Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1345 [party was barred by waiver and estoppel from raising for the first time on appeal a defect in trial court's jurisdiction that did not concern fundamental jurisdiction].)

[3] Undesignated statutory references are to the Probate Code.

[4] " 'The "personal representative" is the person or firm appointed by the probate court to administer the probate of a decedent's estate. [Citation.] The personal representative may be the executor, who is the person named as such in the decedent's will, or it may be the successor to the executor, or an administrator appointed by the court where the decedent died without a will naming an executor.' " (*Estate of Wong* (2012) 207 Cal.App.4th 366, 375, fn. 3.)

requires a creditor seeking payment of a judgment from an estate to file a claim with the personal representative of the decedent's estate within a certain period or be barred from enforcing their claims. (§§ 9100, 9150, subd. (d).) "The purpose of the requirement is to give the personal representative an opportunity to ascertain speedily the obligations against the estate and the method of payment." (15 Witkin, Summary of California Law (11th ed. 2022) Wills and Probate § 657.)

Upon the filing of a claim, the personal representative must allow or reject the claim, in whole or in part. (§§ 9250, subd. (a); 9255, subd. (a).) When a personal representative rejects a claim, in whole or in part, a creditor must "bring an action on the claim" or the rejected part of the claim within a specified period or the claim will be barred. (§§ 9255, subd. (b), 9353, subd. (a).) A claim that is allowed by a personal representative appointed with authority under the Independent Administration of Estates Act (§§ 10400–10592) (IAEA), like Zappone, is "included among the debts [of the estate] to be paid in the course of administration."[5] (§§ 9003, 10552; cf. § 9251 [court must approve or reject a claim allowed by a non-IAEA personal representative].)

The Probate Code specifies the order of priority of different types of debts of an estate, including established claims. (§§ 11401, 11420.) Leaving aside debts owed to the state or

_____

[5] Zappone was appointed with limited authority under the IAEA. A personal representative with limited authority cannot engage in certain transactions involving real property but otherwise has the same power as a representative with full authority. (§ 10403.)

7

federal governments, the expenses of administration of the estate are the first priority, followed by obligations secured by a lien like a mortgage or deed of trust, funeral expenses, expenses of the decedent's last illness, a family allowance, wage claims, and, finally, "[g]eneral debts, including judgments not secured by a lien and all other debts not included in a prior class." (§ 11420, subd. (a).) After reserving funds to pay for the expenses of administration, the personal representative "shall pay" funeral expenses, expenses of last illness, a family allowance, and wage claims, meaning such payments are mandatory. (§§ 12, 11421.) Except for those types of debts, "the personal representative is not required to pay a debt until payment has been ordered by the court." (§ 11422.) The court generally orders payment of claims at an accounting after the claims-filing period has closed. (2 Bender, California Probate Practice (2023) § 14.02[2].)

Section 11423, subdivision (a) states that interest accrues on a debt from the date the court orders payment of it. For debts based on contracts, "Notwithstanding subdivision (a), interest accrues at the rate and in accordance with the terms of the contract." (§ 11423, subd. (b).) According to a comment by the Law Revision Commission, which drafted section 11423, "In the case of a debt reduced to judgment, interest commences on entry of the judgment." (Recommendation Proposing New Probate Code (December 1989) 20 Cal. Law Revision Com. Rep. 1001 (1990) p. 1781; *People v. Martinez* (2000) 22 Cal.4th 106, 129 [when Legislature adopts Law Revision Commission's proposal,

8

its comments "are persuasive evidence of the Legislature's intent"].)

Section 10552 gives personal representatives under the IAEA the authority to allow, pay, and compromise or settle claims against the estate. (§ 10552, subds. (a) & (b).) Personal representatives can exercise this authority without court supervision. (§ 10500 [IAEA personal representatives can administer estate as provided in the IAEA, which includes § 10552, without court supervision]; Ross & Cohen, California Practice Guide: Probate (The Rutter Group 2020) ¶9:75.) However, several treatises caution personal representatives against exercising this authority too freely because of the personal risks to the personal representative if the estate does not have enough money to pay debts of higher priority. Thus, one treatise cautions, "the personal representative must exercise extreme care in paying any debts without a court order, because, should the estate ultimately be found to be insolvent, the representative will be exposed to liability." (2 Bender, California Probate Practice, *supra*, § 14.02[2].) Another treatise similarly advises, "Except for those debts which must be paid without prior court order . . . , the representative normally will receive optimum protection from liability by holding off payment until settlement of an account. Unless the debt clearly is *not* disputable and the estate clearly is *solvent*, payment without court order risks *surcharge* should the particular claim ultimately be disallowed . . . or the estate turns out to be insolvent (thus requiring that the approved debts be prioritized for payment

9

pursuant to Prob. C. § 11420). The best advice is not to pay doubtful creditor claims before the claim-filing period expires, the representative's account is settled, and the order settling the account and directing payment has become final." (California Practice Guide: Probate, *supra*, ¶8:257.3 [internal citations omitted]; see also *id*. ¶9:84.1 [IAEA representatives must follow fiduciary standard, which may require that IAEA powers not be exercised in some situations].)

## II.    Liability

With this background, we turn now to Tawnya's attempt to enforce the stipulated judgment against Malcolm's estate. "Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally." (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) " 'The precise meaning of any contract . . . depends upon the parties' expressed intent, using an objective standard. [Citations.] When there is ambiguity in the contract language, extrinsic evidence may be considered to ascertain a meaning to which the instrument's language is reasonably susceptible. [Citation.] . . . [¶] We review the agreement and the extrinsic evidence de novo, even if the evidence is susceptible to multiple interpretations, unless the interpretation depends upon credibility. [Citation.] If it does, we must accept any reasonable interpretation adopted by the trial court. [Citation.]' [Citation.] '[W]here . . . the extrinsic evidence is not in conflict, construction of the agreement is a question of

10

law for our independent review.' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266–1267.)

The judgment and the stipulation attached to the judgment both state, "If [Malcolm] dies before the spousal support has been paid, the balance of spousal support due will be paid from [Malcolm]'s estate." This provision is ambiguous as to whether Malcolm's estate was obligated to make monthly payments until the end of the spousal support period or pay all the remaining support due in one lump sum. Tawnya testified that she and Malcolm intended the provision to mean she was entitled to monthly payments after Malcolm's death, since she relied on the monthly payments to pay her expenses. But Tawnya also testified that she would have accepted a lump sum payment if Zappone had made the lump sum payment promptly. Based on this extrinsic evidence, either monthly payments or a lump sum payment would have satisfied the stipulated judgment, as the trial court ruled, but either form of payment had to occur promptly.

Zappone never made any support payments, lump sum or otherwise, so she has failed to comply with the stipulated judgment. Her various arguments against this conclusion are unavailing. First, she argues that since the stipulated judgment does not specify a time for the payment of support after Malcolm's death, by law a reasonable time is allowed. She cites Civil Code section 1657 in support of this argument, which states in full, "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act

11

is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained." Even assuming the statute applied here, it would not help Zappone. The support obligation was to pay money to Tawnya, so by the terms of the statute, Zappone still had to pay the support immediately upon learning of the obligation, and she has not yet done so.

Second, Zappone contends that payment of Tawnya's support from Malcolm's estate was impossible until she was appointed administrator. It is true that Zappone could not pay the support until she was appointed, since generally "[a] person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective." (§ 8400, subd. (a).) But Zappone did not pay the support even after she was appointed, so this argument cannot justify a reversal of the trial court's finding of liability. Moreover, the Probate Code allows for the appointment of a special administrator of an estate, to temporarily manage its affairs until a personal representative is appointed. (§ 8540, subd. (a) ["If the circumstances of the estate require the immediate appointment of a personal representative, the court may appoint a special administrator to exercise any powers that may be appropriate under the circumstances for the preservation of the estate"]; Ross & Cohen, California Practice Guide: Probate, *supra*, ¶14:5 [special administration usually involves matters where time is of the essence, such as "[w]here tax or other obligations are

12

becoming immediately due and payable, and delay in payment may result in penalties and/or interest"].) Zappone failed to seek appointment or authority as a special administrator to pay support to Tawnya.

Zappone's third argument relates to her second. She argues that, after her appointment as administrator, she was and is excused from paying the support until a probate court orders her to do so, based on section 11422, which states in subdivision (a) that with an exception not relevant here, a "personal representative is not required to pay a debt until payment has been ordered by the court." But Zappone was appointed administrator with authority under the IAEA. Once appointed, she could have paid Tawnya's spousal support claim without court approval. (§§ 10500, 10552, subd. (a).) To be sure, she may have had sound reasons for waiting until the probate court ordered her to pay the support, to avoid incurring personal liability to the estate if it turned out to be insolvent. (2 Bender, California Probate Practice, *supra*, § 14.02[2]; Ross & Cohen, California Practice Guide: Probate, *supra*, ¶¶8:257.3, 9:84.1.) But that does not mean the obligation to pay Tawnya her support disappears until a probate court orders payment.

Zappone also cites section 10501, subdivision (a)(3) and (4) as preventing her from paying the spousal support obligation without court approval. That subdivision requires court approval for settlement of accounts and preliminary and final distributions and discharge. (§ 10501, subd. (a)(3)–(4).) Tawnya's spousal support payments were creditor claims. Zappone cites nothing to

13

suggest Tawnya's support claim could be classified as an account or distribution for the purposes of this statute.

Finally, Zappone points out that she terminated the automatic payment of Tawnya's support before she was appointed administrator, so that action cannot be imputed to the estate. Again, Zappone is correct (*Lamkin v. Vierra* (1961) 198 Cal.App.2d 123, 126–128), but it does not change the outcome here. As discussed *ante*, an estate can be liable for the legal consequences of not complying with an obligation even if no administrator is appointed, and Zappone did not pay the spousal support even after being appointed administrator.

## III.  Remedy

Having concluded that Zappone failed to satisfy the judgment by not promptly making monthly payments or a lump sum payment from the estate, we turn to the question of whether Zappone owes Tawnya anything beyond the $22,800 in support that Zappone admits is still due. Tawnya contends the estate's failure to comply with the stipulated judgment triggers its liquidated damages provision, which states, "If [Malcolm] fails to pay the spousal support as agreed, [Tawnya] shall have the right to claim the true assessed value of her community interest in the real property and business." In the alternative, Tawnya urges us to affirm the trial court's award of contract damages. Zappone argues the trial court properly rejected Tawnya's request for the value of her community property interests, and she further argues the trial court should not have awarded Tawnya special damages or prejudgment interest.

14

### A. *Liquidated damages provision*

Civil Code section 1671, subdivision (b) provides that, with some exceptions not relevant here, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." This places the burden of proof on the party seeking to invalidate the damages provision. (*Ibid.*; *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 806 (*Vitatech*).) Civil Code section 1671 makes invalid a stipulated judgment that incorporates an unreasonable liquidated damages provision. This is because "a liquidated damages provision lacking a reasonable relationship to the range of damages the parties reasonably could have anticipated is unenforceable and void as against public policy," and " '[a] court cannot validly enter a judgment or order which is void even if the parties agree to it.' " (*Vitatech*, at p. 807.) Courts will therefore refuse to enforce invalid liquidated damages provisions in stipulated judgments. (*Ibid.*; *Graylee v. Castro* (2020) 52 Cal.App.5th 1107, 1114.)

"A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under [Civil Code] section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be

15

sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty." [Citation.] 'A penalty provision operates to compel performance of an act [citation] and usually becomes effective only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract.' " (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977.) As the Supreme Court has explained, "In short, '[a]n amount disproportionate to the anticipated damages is termed a "penalty." A contractual provision imposing a "penalty" is ineffective, and the wronged party can collect only the actual damages sustained.' " (*Ibid.*) "[I]t is essentially a factual question whether the parties reasonably estimated foreseeable damages under the prevailing circumstances [citations] that becomes a question of law when the facts are undisputed and susceptible of only one reasonable interpretation." (*Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 723.)

The trial court found the liquidated damages provision was intended to act as a penalty. It found nothing in the record to show that Tawnya and Malcolm attempted to calculate the range of damages Tawnya might incur if she did not timely receive her payments. The court found no evidence that the value of Tawnya's community property interests bore any relationship to

16

her anticipated damages in the event that Malcolm failed to make the support payments.

Tawnya points out that liquidated damages provisions are generally enforceable unless found to be unreasonable, and she argues Zappone failed to carry her burden of proving the provision in the stipulated judgment was unreasonable. But Tawnya testified that she needed the monthly payments to meet her daily needs, discussed with Malcolm the monthly payments continuing after his death, and did not want a lump sum payment of support from Malcolm's estate because she "would already be hurting" while the probate administration process proceeded. She would have been willing to accept a lump sum payment, but only if the estate had paid the lump sum promptly, without making her wait for several months or a year while her bills went into arrears and her credit was ruined. This suggests that the parties predicted in advance that a missed support payment would cause Tawnya to have unpaid bills and pay late fees, penalties, and the like—precisely the kinds of harm she did, in fact, suffer. But Tawnya and Malcolm did not intend the liquidated damages provision to approximate such harms. When asked what she wanted the agreement to accomplish if the monthly payments were not made as agreed, she said only that she wanted to "go and get" her community property interests. In other words, if Tawnya did not receive her monthly payments, she wanted a form of quasi-rescission or restitution that deprived Malcolm of the monetary benefit of Tawnya's admittedly generous division of community property (but which apparently

17

did not involve returning the payments she had already received). This testimony supports the trial court's conclusion that the liquidated damages provision was not intended as an approximation of Tawnya's damages, but rather as the type of penalty provision that Civil Code section 1671 forbids.

Tawnya contends the liquidated damages provision is reasonable because it merely restores to Tawnya what she gave up in exchange for the security of monthly payments. This argument confuses the consideration Tawnya exchanged for the monthly payments with the damage she would suffer from an interruption in the payments. Her compromise of her community property interests has no apparent relationship with the estimated harm from a breach of the support obligation. Additionally, there is no indication in the record that the parties placed a value on Tawnya's community property interest in the home, which would have been necessary if they intended the value of that interest to approximate her harm from a breach of the stipulated judgment. (See *Vitatech*, *supra*, 16 Cal.App.5th at p. 811 [stipulation for entry of judgment in the full amount requested in a complaint imposed unlawful penalty where defendant did not admit liability and there was no indication the plaintiff was likely to recover its full damages at trial].) Tawnya testified about how much equity she believed was in the home at the time of the stipulated judgment, but the couple bought the house in part using Malcolm's separate property, so Tawnya's community property interest could not have been a simple one-half share of the equity.

18

Tawnya also asserts that Zappone waived any challenge to the validity of the liquidated damages provision by not pleading it in her answer.  Tawnya is correct that Zappone failed to plead the invalidity of the liquidated damages provision as an affirmative defense, but she does not cite any authority to support her contention that this necessarily requires reversal of the trial court's ruling on that basis, so we may disregard it.  (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498 ["We are not required to develop appellants' arguments for them.  [Citation.]  'We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt" ' "]; see also Code Civ. Proc., §§ 469 [variance between pleadings and proof is not material unless it misled the adverse party to his or her prejudice], 475 [court must disregard defects in pleadings which do not affect parties' substantial rights].)[6]

### B.  *Special damages*

The trial court awarded Tawnya special damages to compensate her for damage she suffered from Zappone's failure to pay the spousal support.  Zappone argues these damages were

---

[6] Because we agree with the trial court that the liquidated damages provision is invalid and unenforceable, we need not consider the trial court's alternative rationale that the liquidated damages provision applied only if Malcolm personally failed to make a spousal support payment, not if his estate failed to make a payment.

improper because the stipulated judgment cannot be enforced with contract damages.  We agree.

"If the court approve[s] the terms of [a marital settlement] agreement as being fair and equitable, its enforcement may rest in a cause of action for its breach.  [Citation.]  If, however, a marital settlement agreement merges into the judgment, the agreement is superseded by the decree and can only be enforced as a judgment and not as a contract."  (*In re Marriage of Lane* (1985) 165 Cal.App.3d 1143, 1147.)  "Marital settlement agreements merged into interlocutory judgments become part of a judgment and enforceable by contempt. Marital settlement agreements not merged into an interlocutory decree are enforceable as a contract.  [Citations.]  A merged ' ". . . separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such.  Once the contract is merged into the decree, the value attaching to the separation agreement is only historical.' "  [Citation.]  'Merger, then, replaces the obligations of the contract with those of the decree [and] the merger itself has extinguished the contract's obligations.' "  (*In re Marriage of Jones* (1987) 195 Cal.App.3d 1097, 1104.)

"The question of whether a marital settlement agreement is merged into the divorce decree is one of law."  (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1221.)  " 'An examination of cases dealing with the question of merger [citation], reveals that the courts, in determining the intent of the parties and the intent of the court rendering the decree [citation] have considered the

20

following factors: (1) recitals in the agreement which indicate that it is to be presented to the divorce court for approval [sic] and/or incorporation in the decree; (2) the physical incorporation of the words of the agreement in either the body of the decree or as an exhibit attached thereto; (3) if not so attached, the extent to which the decree expressly purports to incorporate the provisions of the agreement, and the extent to which the agreement so incorporated can be identified from the terms of the decree; and (4) the extent to which the decree purports to order the performance of the terms of the agreement.' " (*In re Marriage of Lane, supra*, 165 Cal.App.3d at pp. 1147–1148.)[7]

These factors all indicate that Tawnya and Malcolm's settlement agreement merged into the judgment. First and most obviously, the stipulation was framed as a stipulated judgment and included a signature line for a judge. Second, the words in the stipulation relating to payment of spousal support, the results of Malcolm's failure to pay as agreed, and the obligation of Malcolm's estate to pay the balance of spousal support due were all typed into the judgment's spousal support order. Finally, the stipulated judgment states, "Each attachment to this judgment is

_____

[7] Rule 5.411 of the California Rules of Court addresses how parties should request a stipulated judgment. Rule 5.411(b) states, "A stipulated judgment constitutes a written agreement between the parties as to all matters covered by the stipulation." Tawnya does not rely on this rule, and we do not interpret it as being contrary to the long-established principle that marital settlement agreements can merge into a judgment of dissolution. Rather, we construe it as indicating that a stipulation can be enforced as a contract before it is merged into a judgment.

incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions." The order dividing Tawnya and Malcolm's property repeats that "the settlement agreement between the parties . . . is attached and made a part of this judgment." The signed stipulation is attached to the judgment.

Because Tawnya and Malcolm's stipulation merged into the judgment, the stipulated judgment cannot be enforced with contract damages. The trial court therefore erred in awarding Tawnya special damages.

## C.  *Prejudgment interest*

Zappone faults the trial court for relying on Civil Code section 3289, subdivision (b) to award Tawnya prejudgment interest. She contends the Probate Code governs the calculation of interest and under section 11423, subdivision (a), interest will not accrue until the probate court orders her to pay Tawnya's claim.

We agree that the Probate Code governs the calculation of interest, and section 11423, subdivision (a) declares that interest on a debt accrues from the date the court orders payment of it. But section 11423 also states in subdivision (c), "Notwithstanding subdivision (a), in the case of a debt for unpaid taxes or any other debt for which interest is expressly provided by statute, interest accrues at the rate and in accordance with the terms of the statute." Section 685.010, subdivision (a)(1) of the Code of Civil Procedure establishes that the legal rate of interest applicable to judgments like the stipulated judgment is 10 percent per year.

22

The Law Revision Commission comment on section 11423 also remarks that "[i]n the case of a debt reduced to judgment," like the stipulated judgment here, "interest commences on entry of the judgment." (20 Law Revision Com. Rep. 1001, *supra*, at p. 1781.) By the terms of the Probate Code, then, Tawnya is entitled to interest on her support payments, even though the probate court apparently has not yet ordered payment of her claim.

Because the stipulated judgment required Malcolm or his estate to make installment support payments, the calculation of prejudgment interest is slightly more complicated than simply calculating the interest from the date of entry of the stipulated judgment. For spousal support orders, interest accrues for each monthly installment of spousal support as it becomes due and is not paid. (Code Civ. Proc., § 685.020, subd. (b) ["Unless the judgment otherwise provides, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due"]; *In re Marriage of Cordero* (2002) 95 Cal.App.4th 653, 657.) Tawnya admitted she would have accepted a prompt lump sum payment as a form of prepayment of the support due. But in the absence of a prompt lump sum payment immediately after Malcolm's death, Tawnya was entitled to monthly support payments until the support obligation was satisfied. Accordingly, 10 percent interest began accruing separately on each month's unpaid spousal support on the date each payment became due, starting with the May 2017 payment. The trial court's calculation of prejudgment interest on

23

the entire amount of support starting with Malcolm's death is therefore incorrect. We will remand for the trial court to recalculate the prejudgment interest based on the correct formula.

## IV.    Attorney's fees

Zappone argues the trial court abused its discretion in determining that Tawnya was the prevailing party entitled to attorney's fees under the attorney's fees provision of the stipulated judgment. Given that we have affirmed the finding of liability but reversed the award of special damages and the calculation of prejudgment interest, we will remand for the trial court to exercise its discretion anew in determining which party, if any, prevailed in this action. (Civ. Code, § 1717, subd. (b)(1) [court determines who is the party prevailing on the contract for purposes of contractual attorney's fees]; *DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 974 [" 'in deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources' "].)

### DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings not inconsistent with this opinion. The parties shall bear their own costs on appeal.


BROWN, P. J.


24

WE CONCUR:

GOLDMAN, J.
WHITMAN, J.*
*Trunnell v. Zappone* (A163313)

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.